## Dorfman v. Lyons et al.

*Scoblionko & Frank,* for plaintiff.

*Butz, Hudders, Tallman & Rupp,* for defendants.

HENNINGER, P. J., March 28, 1955.—To our adjudication in this case, plaintiff has filed 47 exceptions.

Exceptions nos. 1 to 9 refer to our rulings on testimony. Plaintiff has not pointed out in his brief wherein any of the rulings were erroneous and we have not found them to be so.

Exception no. 10 is covered by our finding no. 16 and nos. 11 and 12 by our finding no. 17. Exceptions nos.

13, 14, 15, 16, 17, 18, 19 refer to the alleged commission agreement on which plaintiff relies; they go to the meat of the case and will be discussed later.

We see no particular significance to this case in plaintiff's request no. 32, the subject of his twentieth exception, but it does contain relevant facts that we apparently overlooked as a step in the parties' transactions with each other. We adopt it as an additional finding to be numbered no. 29. Plaintiff's exception no. 21, relating to refusal of his request no. 33 is in the same situation. We consider it immaterial, but since it is a true statement and apparently not covered by any finding, we adopt it as an additional finding to be numbered no. 30.

Exceptions 22, 23 and 24 relate to our refusal to accept plaintiff's version of the conversations at the time of termination of employment. Part of what plaintiff requests was included in findings nos. 20, 24, 26 and 27. What relates to a contract for commission of 10 percent will be discussed later.

Exceptions nos. 25 and 26 relate to conversations relating to settlement. Our findings nos. 24 and 25 go as far as we dare go, and perhaps a bit farther, in using statements in efforts to compromise against the party against whom a demand has been made. The fact of offer to compromise was inadmissible and it is very doubtful whether the statements found to have been made were admissions, admissible into evidence, despite the fact that they were spoken in connection with an offer to compromise: Rabinowitz v. Silverman, 223 Pa. 139, 144.

In relation to exceptions nos. 27, 28, 29 and 30, we discussed the testimony of plaintiff and defendants in our discussion and see no need to add to that discussion. We do not consider an appraisal of testimony as the subject of findings of fact.

Exceptions nos. 31, 32, 33 and 34 relate to our refusal of plaintiff's requests for conclusions nos. 1, 2,

3 and 4. Request no. 1 asks a conclusion that plaintiff has established his contract; request no. 2 is subsidiary to no. 1; request no. 3 is a correct statement that the parties terminated their relations but it is immaterial. Request no. 4 for a conclusion that defendants must account to plaintiff, flows from request no. 1 and from rejected requests for findings.

Exceptions nos. 35, 36, 37, 38, 39, 40, 41, 42 and 44 relate to findings nos. 17, 18, 19, 20, 21, 22, 23, 25 and 28 most of which are based upon uncontradicted testimony and many of which are favorable to plaintiff.

Exceptions nos. 45, 46 and 47 are to our conclusions of law nos. 2, 3 and 4, unfavorable to plaintiff, but flowing from the facts as found.

This leaves two matters for review (1) the propriety of our decision that plaintiff has failed to make out a case by the preponderance of the evidence, and (2) our holding that had he made out such a case, he would nevertheless be precluded from recovery by section 405 (b) of the Defense Production Act of 1950, 64 Stat. at L. 807, 50 App. U. S. C. §2105.

Both points have been fully covered in our discussion, so we limit this discussion to additional points raised in the new briefs submitted by counsel.

Plaintiff's counsel stresses our failure to find positively that his client lied on the witness stand. We do not intend to be goaded into a position where we must so stigmatize plaintiff. Since the burden of proof rested on plaintiff, his case falls unless we find that he was telling the truth. If we cannot so find, and we cannot, he has not made out his case. Both sides agree to this statement of law, reciting different sections of American Jurisprudence in support thereof.

Plaintiff's case depended upon our finding that a definite agreement had been reached between him and defendants as pleaded. He has not convinced us of that fact. No matter how slight his burden may be, he

has not tipped the scales in his own favor and therefore has not met the burden placed upon any plaintiff.

Plaintiff again raises two points concerning the defense of the Defense Production Act: (a) It was not raised by the pleadings, and (b) it does not apply to plaintiff, a professional engineer.

To what has been said in the discussion in the adjudication may be added that the case of Leonard v. Martling, 174 Pa. Superior Ct. 206, has now been affirmed by the Pennsylvania Supreme Court in 378 Pa. 339, definitely resolving any conflict between Pa. R. C. P. 1030, requiring the pleading of specific affirmative defenses and Pa. R. C. P. 1032, which permits raising at any stage of the proceedings and without any prior pleading the question of "failure to state a claim upon which relief can be granted".

That case relates to certain phases of the statute of frauds, which is mentioned as a defense, whose pleading is required under Pa. R. C. P. 1030, but the rule would apply with equal force in our case.

The prohibition against enforcement of any contract violative of the Defense Production Act is against both the employer and the employe: ". . . no employer shall pay, and no employee shall receive, any wage, salary, or other compensation in contravention of any regulation or order, etc., etc."

This was followed by section 409(b), which made willful violation of the act a misdemeanor punishable by fine and imprisonment.

The prohibition, therefore, is one imposed by law not for the protection of either the employer or the employe, but for the protection of the Republic and of its economy. It follows therefore, that neither employer nor employe could waive its provisions and that as a matter of public policy the court was forced to recognize its legal incapacity to enforce a contract forbidden by Federal law.

If it was a violation of the law for the employe to "receive" the additional pay and for the employer to pay it, this could not aid the employe to receive what it was unlawful for him to receive or order the employer to pay what Federal law forbade him to pay.

Plaintiff has not called to our attention any cases modifying the effect of the Federal cases cited in our adjudication (In re Pringle Engr. & Mfg. Co., 164 F. 2d, 299; de La Rama S. S. Co., Inc., v. Pierson,174 F. 2d 84) and therefore the repeal of the act does not render enforcible a contract of employment unenforced when the act was in force.

Plaintiff contends that he was exempted from the operation of the Federal act because section 402(e) thereof provides: "The authority conferred by this title shall not be exercised with respect to the following: . . . (ii) Rates or fees charged for professional services."

We agree with plaintiff that the later Amendment of July 31, 1951, which excluded from the original act wages and salaries of physicians and attorneys employed by others and the Amendment of June 30, 1952, after the alleged contract and only two months before termination of the employment, excluding professional engineers, architects and public accountants employed by others, were not restrictive or definitive but were liberalizing amendments.

The obvious reason for their passage, however, defeats plaintiff's claim. The original exclusion, using the terms "rates or fees" certainly referred to independent professional men who held themselves out to the world for engagement or retaining rather than for regular employment at wages or on commission.

While it might be argued, and in our opinion with little validity, that Lehigh Engineering's relationship to its customers was in a professional capacity, that

was not the relationship of plaintiff either to Lehigh Engineering or to its customers.

To the customers plaintiff was an employe and agent of Lehigh Engineering from whom they were buying equipment. To Lehigh Engineering he was a salaried employe. On his own version of the case, the commission was only to be a guaranteed substitute for the hitherto voluntary bonus.

Whether or not plaintiff was rendering services as a professional engineer, he was engaged in employment as an engineer and not engaged in the profession of engineering. In neither case would "rates or fees" aptly describe his compensation. The nature of his relationship with defendants was not to be changed by the alleged contract, but only the method of computing his compensation.

This is borne out by the necessity of amending the Defense Production Act to include engineers in his situation. If every engineer had been exempted from the act because engineering is a profession, there would have been no need for an amendment, extending the exclusion to engineers employed by other firms.

Having carefully reviewed the testimony, our adjudication and the exceptions filed thereto, we are constrained to hold to our former adjudication, adding thereto the additional findings of fact heretofore referred to.

Now, March 28, 1955, plaintiff's exceptions nos. 1 to 19 and 23 to 47 to our adjudication are dismissed and the decree nisi dismissing his complaint is now entered as the final decree in the case; his exceptions nos. 20 and 21 are sustained and the following findings of fact are added to the adjudication:

29. In August of 1952 plaintiff and defendant mutually agreed to the termination of plaintiff's employment as of September 3, 1952.

30. Prior to September 3, 1952, plaintiff was authorized to have defendant's employes prepare summaries and furnish information relating to the jobs and customers which were identified as "Dorfman's Jobs" or "Dorfman's Business".