398 A.2d 637

**COMMONWEALTH of Pennsylvania**

**v.**

**Glenn COOLEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 8, 1979.

Decided March 14, 1979.

Norris E. Gelman, Philadelphia, for appellant.

Robert B. Lawler, Chief Appeals Div., Jane Greenspan, Philadelphia, for appellee.

Before EAGEN, C. J., and ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

A jury convicted appellant, Glenn Cooley, of murder of the first degree.[1] Post-trial motions were denied and appellant was sentenced to life imprisonment. We reverse and remand for a new trial.[2]

Appellant was arrested and charged with the murder of Pietro Paella. Paella was fatally stabbed in a telephone

---

[1] The alleged offense occurred before June 6, 1973, the effective date of the Crimes Code, see Act of December 6, 1972, P.L. 1482, § 6, and the Penal Code governs. See id., § 2. Murder is defined in § 701 of the Penal Code, Act of June 24, 1939, P.L. 872, formerly 18 P.S. § 4701.

[2] We hear this appeal pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1978–79).

18

booth at the corner of South 13th and Dickinson Streets in Philadelphia on the evening of October 25, 1971. At trial, William Campana, who was also charged with Paella's murder, testified that he encountered appellant at Broad and Snyder Streets on October 25, 1971. When Campana left to get money to buy drugs, appellant went with him. They stopped at the corner of 13th and Dickinson, where Campana tried to persuade a girl to give him money. Campana testified that while he was talking to the girl, he saw appellant "tussling" with a man inside a nearby telephone booth. Campana left the scene while appellant and the man were "tussling."

John Volpe testified that he had loaned his knife to appellant on October 24, 1971. Volpe received a telephone call from appellant on the night of October 26. Appellant told Volpe he had thrown the knife away after he stabbed a man with it. Volpe identified a knife that had been discovered about a block from 13th and Dickinson as the knife he loaned appellant.

 The Commonwealth also introduced an alleged transcript of a statement in which appellant allegedly admitted stabbing Mr. Paella but claimed that he did so in the midst of a fight after the deceased spit on him and used a racial epithet. The written transcript further revealed appellant had disposed of the knife he used in the area in which the knife Volpe identified was found.[3]

I

 Appellant was charged with the unlawful killing of Pietro Paella on October 29, 1971. Trial did not commence until May 5, 1975, three and a half years later. Appellant

3. This Court is required to review the sufficiency of the evidence in every case of murder of the first degree. Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187 (1964). Viewed in the light most favorable to the Commonwealth, the evidence admitted at trial and all reasonable inferences therefrom was sufficient to permit the jury reasonably to conclude appellant was guilty beyond a reasonable doubt of murder of the first degree. See *Commonwealth v. Kichline*, 468 Pa. 265, 271, 361 A.2d 282, 285–86 (1976).

contends he is entitled to a discharge because he was denied his constitutional right to a speedy trial.[4] To determine whether appellant's claim is meritorious, the conduct of both the prosecution and defense must be assessed and balanced in light of four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972) (footnote omitted). Accord, e.g., *Commonwealth v. Ware*, 459 Pa. 334, 346, 329 A.2d 258, 264 (1974); *Commonwealth v. Williams*, 457 Pa. 502, 507, 327 A.2d 15, 17 (1974).

■ The first consideration is length of delay. Inquiry into the other factors is necessary only if the delay is so extensive that it is considered presumptively prejudicial. *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2192. The delay of forty-three months in this case is presumptively prejudicial. See, e. g., *Commonwealth v. Jones*, 450 Pa. 442, 448, 299 A.2d 288, 291 (1973) (thirty-two months delay triggers inquiry into other factors).

To assign reasons for the delay the record must be examined. Appellant was arrested on October 29, 1971. On November 24, 1971, Cecil B. Moore, Esq., who had been privately retained by appellant, entered his appearance. Appellant was indicted on March 7, 1972, and his case was placed in the ready pool on November 27, 1972.[5] A docket entry indicates that it was still in the ready pool on November 14, 1973. On August 22, 1974, the court permitted Mr. Moore to withdraw his appearance and allowed new retained counsel to enter an appearance on behalf of appellant. The docket reveals that the period from August 22 until the date of trial was consumed by pre-trial motions and a number of short continuances granted to the defense.

4. The alleged offense occurred before the effective date of Pa.R. Crim.P. 1100 (prompt trial rule).

5. The docket indicates that six continuances were granted to defense counsel prior to the preliminary hearing on February 10, 1972. Three more continuances were granted to the defense before the case was placed in the ready pool in November, 1972.

20

■ The Commonwealth has an affirmative duty to move a case to trial. See *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972); *Commonwealth v. Williams*, supra. In cases such as this, however, where delay is to a large extent occasioned by privately retained counsel, the entire burden will not be placed upon the Commonwealth. *Commonwealth v. Myers*, 472 Pa. at 210, 371 A.2d at 1283–84. It must be considered that both the defense and prosecution share responsibility for the delay.

■ Consideration of the final two elements of the *Barker* test is more conclusive. Appellant did not assert his right to a speedy trial until he moved for dismissal of the indictment for the first time on February 14, 1975, nearly six months after original counsel was replaced, approximately five months after the suppression hearing, and only a little more than two months before trial. Moreover, appellant has not demonstrated that he was prejudiced by the delay. Impairment of the defense at trial is the most crucial interest protected by the right to a speedy trial. *Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193; *Commonwealth v. Ware*, 459 Pa. at 348, 329 A.2d at 265. There is no indication that the three and one-half year delay interfered in any way with appellant's ability to present his defense. Compare, e. g., *Commonwealth v. Williams*, supra (lapse of memory of witness to the crime, death of potential defense witness, and inability to locate two other defense witnesses); *Commonwealth v. Roundtree*, 469 Pa. 241, 364 A.2d 1359 (1976) (death of eyewitness and discarding of crucial records); *Commonwealth v. Hamilton*, supra (death of witness who might have offered testimony favorable to accused and accused's own loss of memory). On balance, it must be concluded that appellant is not entitled to a discharge for denial of his constitutional right to a speedy trial.

II

Appellant allegedly made an oral inculpatory statement in the presence of two Philadelphia police detectives. Detective Melfi conducted the interrogation and purportedly re-

corded appellant's statement on interview sheets. Detective Kelly was present throughout the interview but was merely an observer. Neither of the two detectives nor appellant signed or initialed any of the interview sheets on which Detective Melfi wrote. The Commonwealth called only Detective Kelly to testify at trial. Appellant objected to Detective Kelly's testimony on the ground it was hearsay.[6] The trial court erroneously overruled the objection and permitted Detective Kelly to read the contents of the interview sheets into evidence.

Out of court statements of an accused are hearsay when introduced into evidence to show the truth of the matter asserted. Generally, however, such evidence is admissible as an admission. 3 Wigmore, Evidence § 816 (Chad. Rev.1970). Here, the Commonwealth failed to establish that appellant ever adopted the writing on the interview sheets as his own statement. The content of the interview sheets, therefore, was not an admission. Thus, Detective Kelly's testimony was improper unless there is some other exception to the hearsay rule that permits Detective Kelly to testify as to what Detective Melfi said appellant said during the interview.

The Commonwealth argues that the writing was admissible under the hearsay exception for past recollection recorded. Before the content of a writing becomes admissible under that exception, the proponent must lay a foundation to show that four requirements are met: "1) the witness must have had firsthand knowledge of the event; 2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it; 3) the witness must lack a present recollection of the event, and 4) the witness must vouch for the accuracy of the written memorandum."

**6.** The trial court had previously denied appellant's pre-trial motion to suppress the statement. Appellant does not challenge that decision on appeal. Cf. Pa.R.Crim.P. 323(j) (denial of motion to suppress does not prevent defendant from opposing evidence at trial on grounds other than suppressibility).

McCormick, Evidence § 299 at p. 712 (2d Ed. 1972). See *Miller v. Exeter Borough*, 366 Pa. 336, 342, 77 A.2d 395, 399 (1951); *Christian Moerlein Brewing Co. v. Rusch*, 272 Pa. 181, 187, 116 A. 145, 147 (1922).

■ The Commonwealth did not lay a proper foundation for Detective Kelly to read the writing into the record as a past recollection recorded. The prosecution did not show on the record that Detective Kelly, even after reviewing the writing, had no independent memory of what appellant had said during the interrogation. See *Commonwealth v. Canales*, 454 Pa. 422, 311 A.2d 572 (1973). Further, it was not established that Detective Kelly had reviewed the interview sheets and determined that they were accurate while the interrogation was fresh in his memory.

■ Thus the contents of the interview sheets were not admissible under the hearsay exception for past recollection recorded. Nor on this record is there any basis for concluding the testimony was admissible as a business record or under any other rule of evidence. Reversible error occurred when over objection Detective Kelly read the interview sheets into evidence. Appellant was prejudiced by the admission of the evidence and is entitled to a new trial.[7]

Judgment of sentence reversed and case remanded for a new trial.

O'BRIEN, J., did not participate in the consideration or decision of this case.

EAGEN, C. J., concurs in the result.

7. Because we award appellant a new trial on these grounds we need not reach his other claims that (1) the trial court erroneously refused to permit appellant to introduce testimony of a court-appointed psychiatrist that William Campana suffered from organic brain damage; (2) appellant's confession was inadmissible because it was not authenticated; (3) the prosecutor's closing argument was prejudicial; and, (4) an impermissible suggestion of other criminal activity was prejudicial error.