435 A.2d 1207

**COMMONWEALTH of Pennsylvania,**

v.

**Michael F. A. MANNING.**

Supreme Court of Pennsylvania.

Submitted May 18, 1981.

Decided Sept. 24, 1981.

654

H. Stanley Rebert, Public Defender, for appellant.

John C. Uhler, Dist. Atty., Wanda D. Neuhaus, Asst. Dist. Atty., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

WILKINSON, Justice.

Appellant was convicted by a jury of two counts of murder of the first degree on January 22, 1979.[1] Post-trial motions were denied and appellant was sentenced to two concurrent terms of life imprisonment on May 21, 1979. At the sentencing, appellant informed the court that he was indigent and requested court appointed counsel to represent him on appeal and also expressed a desire to file additional post-trial motions. The trial court appointed new counsel and granted permission to file additional motions. Supplemental post-trial motions were then filed by the newly appointed counsel and by appellant pro se. After holding an evidentiary hearing to consider the issue of the ineffective-

---

1. Appellant was originally convicted of two counts of murder of the first degree in 1975. Those convictions, however, were reversed and the case was remanded for a new trial because the trial court erred in failing to instruct the jury on the elements of voluntary manslaughter. *Commonwealth v. Manning*, 477 Pa. 495, 384 A.2d 1197 (1978). The instant convictions are the result of the second jury trial held in 1979.

ness of trial counsel,[2] the trial court entered an opinion and order denying the ineffectiveness claim as well as the other assignments of error set forth in the supplemental post-trial motions. This direct appeal followed.

The record establishes these undisputed facts. Appellant shot and killed two people with a high powered rifle on May 19, 1975. Specifically, after quarreling with the victims in his back yard, appellant entered his home, emerged on the balcony with a rifle and fired several shots which resulted in the death of both individuals. Appellant then left the balcony, fired an additional round into one of the bodies at close range, killed the victim's dog, piled the bodies on top of each other and walked into a nearby wooded area. State police apprehended appellant shortly thereafter as he exited the wooded area.

Appellant first argues that the trial court erred in refusing to suppress incriminating statements made to the state police shortly after his arrest on the grounds that he was incapable of knowingly, voluntarily and intelligently waiving his *Miranda*[3] rights. Appellant maintains that the ingestion of a large quantity of drugs prior to the shootings so mentally and physically debilitated him that he was unable to effect a valid waiver of his constitutional rights. We do not agree.

'[I]ntoxication is a factor to be considered, but it is not sufficient, in and of itself to render the confession involuntary.' *Commonwealth v. Jones*, 457 Pa. 423, 432–33, 322 A.2d 119, 125 (1974). The test is whether there was sufficient mental capacity for the defendant to know what he was saying and to have voluntarily intended to say it. *Commonwealth v. Smith*, 447 Pa. 457, 460, 291 A.2d 103, 105 (1972). We believe this standard is equally applicable

2. The evidentiary hearing was held because some of the allegations of ineffectiveness involved matters not of record before the trial court. After the hearing, Judge Blakey rendered an opinion and order for the lower court which dismissed some thirty claims of ineffectiveness.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

to those instances where an accused was allegedly under the influence of drugs or narcotics at the time of his interrogation by police officials.

*Commonwealth v. Culberson*, 467 Pa. 424, 427–28, 358 A.2d 416, 417 (1976). Moreover, it is well-established that

'[t]he burden to prove a valid waiver by a preponderance of the evidence is upon the Commonwealth . . . and our responsibility upon review is to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings. . . . In making this determination, we are to consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.'

*Commonwealth v. Firth*, 479 Pa. 333, 337, 388 A.2d 683, 685 (1978) (quoting *Commonwealth v. Goodwin*, 460 Pa. 516, 522–23, 333 A.2d 892, 895 (1975) (citations omitted)).

A careful review of the suppression record reveals that while appellant appeared disheveled and emotionally upset during the interrogation, there is evidence that he was not so intoxicated by drugs or alcohol as to not understand and voluntarily waive his *Miranda* rights. The four police officers who took appellant into custody testified that appellant was alert, coherent, responsive to questions and did not appear to be under the influence of drugs or alcohol. The officers opined that appellant's emotional and sometimes erratic behavior was a natural consequence of the trauma which normally follows the commission of a violent crime and did not impede his ability to waive his rights. Further, the record contains evidence that appellant asked to see a priest after the questioning began and also requested to contact his parents and wife via phone. These factors lend additional support to the conclusion that appellant had sufficient mental capacity to voluntarily waive his right to remain silent. The lower court did not err in refusing to suppress appellant's statements.

■ Appellant next argues that the method used by the Commonwealth to impeach a defense witness on cross-examination, one Susan Manning, was improper and that the trial court erred in failing to sustain objections thereto. The Commonwealth attempted to impeach the witness by calling her attention to statements she made while testifying in a prior proceeding which were contradictory to her testimony on direct examination by defense counsel. When asked if she recalled making the prior inconsistent statements, the witness testified that she did not recall her specific testimony at the prior proceeding. The Commonwealth then proceeded to further cross-examine the witness concerning the quality of her recollection as to the prior inconsistent testimony. Appellant maintains that it was error for the trial court to allow the Commonwealth to continue cross-examination for purposes of impeachment after the witness had stated that she could not remember making the inconsistent statements. We see no error in the Commonwealth's manner of impeachment.

■ By asking the witness if she recalled the inconsistent statements, the Commonwealth was attempting to lay a foundation for the introduction of the impeachment testimony. This effort was laudable because the inconsistent statements were part of the transcript of the prior proceeding and could have been admitted into evidence for purposes of impeachment without asking the witness if she remembered making the statements. *Commonwealth v. Dennison*, 441 Pa. 334, 272 A.2d 180 (1971).

This Court noted in *Dennison* that

[i]t was once held that in order to impeach the credibility of a witness by proof of statements contradictory to his trial testimony, it was first necessary to lay grounds for the admission of the impeaching testimony by calling the witness' attention to the contradictory statements and inquiring if he had made such. However, it has been established for some years in Pennsylvania that such procedure is not mandatory and is now a matter within the sound discretion of the trial judge, subject to reversal if the discretion is abused.

*Id.*, 441 Pa. at 338, 272 A.2d at 181–82.

Thus, by questioning the quality of the witness' recollection, the Commonwealth gave the witness an opportunity to account for the inconsistencies between her testimony on direct examination and the statements made at the prior proceeding. The Commonwealth can hardly be accused of improper impeachment where it has done everything possible to lay a proper foundation for cross-examination by way of prior inconsistent testimony.

Appellant next argues that the trial judge abused his discretion and committed reversible error by questioning an expert witness called by the defense after counsel had concluded their examinations. We do not agree.

" 'It is always the right and sometimes the duty of a trial judge to interrogate witnesses, although, of course, questioning from the bench should not show bias or feeling nor be unduly protracted.' " *Commonwealth v. Seabrook*, 475 Pa. 38, 45, 379 A.2d 564, 567 (1977) (footnote omitted) (quoting *Commonwealth v. Watts*, 358 Pa. 92, 96, 56 A.2d 81, 83 (1948)).

Although the law is clear that a trial judge may interrogate a witness, the judge should not assume the role of an advocate, express an opinion on the merits of the case or cast doubt on the witness' credibility. *Commonwealth v. Laws*, 474 Pa. 318, 378 A.2d 812 (1977); *Commonwealth v. Myma*, 278 Pa. 505, 123 A. 486 (1924).

Applying the above standards to this case, we note that the trial judge's questions amounted to a reasonable attempt to clarify issues raised by counsel and did not transcend those guidelines set out above.

Appellant next contends that the trial court erred in allowing the Commonwealth's expert to testify concerning his opinion as to the presence of a drug known as phencyclidine (PCP) in appellant's blood and urine. The expert's opinion was based on the results of chemical tests designed to detect traces of PCP in specimens of appellant's blood and urine. Appellant argues that the Commonwealth failed to

lay an adequate foundation for the expert testimony in that the expert called to testify was not the individual who actually performed the tests in question.[4] Based on our review of the record we conclude that the Commonwealth did lay a sufficient foundation to enable its expert witness to state his opinion with regard to whether appellant had detectable levels of the drug in his blood and urine at the time of the shootings.

The following excerpt from the record establishes to our satisfaction that the Commonwealth's expert had absolute control over the testing procedures and was actively involved in the actual performance of the tests.

Q. Mr. Cohn, you admit today then, that with respect to the actual testing of the blood of [appellant], you did not do it?

A. No, I did not say that. I did not say I was not in the presence when they were done. I had complete control of those specimens. Certain aspects of the tests were assisted by other qualified and trained individuals. It wasn't that I was not there, it wasn't that I did not control that specimen. The specimen was in my custody and I directed what was to be done, how it was to be done. I'm saying I could had help in doing certain things. But, nothing was done outside of my presence.

After the above exchange the trial judge overruled the objection and the expert testified that the results of the tests were that "[n]o [PCP] was detected in either the blood or the urine . . ." and that he was "reasonably scientifically certain" that if appellant had ingested a large quantity of the drug as claimed, there would have been detectable levels in his blood and urine.

■ Since the witness was qualified as an expert in toxicology and he gave the facts upon which his opinion was

4. Appellant also contends in his brief that the chemical test used was not a reliable method to test for the presence of PCP in one's blood and urine. However, we are precluded from considering that issue since a timely, specific objection to the reliability of the test was not raised at the time of trial. *Commonwealth v. Williams*, 458 Pa. 319, 326 A.2d 300 (1974).

based, the testimony was admissible and the weight to be given it was for the jury to decide. *See, Commonwealth v. Russell,* 459 Pa. 1, 326 A.2d 303 (1974); *Commonwealth v. Thomas,* 444 Pa. 436, 282 A.2d 693 (1971).

Appellant also argues that he was denied effective assistance of counsel and sets forth some sixteen allegations of error in support of his claim.

■ An evidentiary hearing held below on the issue of ineffectiveness resulted in a thirteen page opinion by Judge Blakey which dismissed the ineffectiveness claims and found that defense counsel's "representation was highly effective". Our review of the lengthy trial record as well as the transcript of the evidentiary hearing convinces us that counsel's trial strategy was not to contest the fact that appellant had killed two people, but instead to defend on the basis that appellant was legally insane at the time of the shootings or at least incapable of forming any intent to kill. This trial strategy was quite reasonable in light of the Commonwealth's overwhelming evidence against appellant. Because appellant's allegations of ineffectiveness in essence are directed towards tactical decisions designed to reasonably effectuate and enhance counsel's choice of trial strategy, we find the claims to be without merit. *Commonwealth v. Turner,* 469 Pa. 319, 365 A.2d 847 (1977).

■ Appellant next contends that prejudicial error occurred when the Commonwealth in its closing argument commented that appellant had asked to see an attorney immediately after his arrest. We do not agree. The remark was intended to advance the Commonwealth's position that appellant was mentally coherent at the time of his arrest. As such, it was not intended to act as evidence of guilt and in no way created an inference of guilt when combined with appellant's constitutional right to have an attorney present during questioning. Under the circumstances, we cannot say that the prosecutor's comment amounted to prejudicial error.

662 ■

■ In conclusion, appellant raises the following assignments of error which we have reviewed and find to be also without merit: That the trial court erred in its instruction to the jury concerning the proper application of voluntary intoxication as a defense to murder of the first degree; and that the trial court erred in not imposing a minimum sentence.[5]

Judgment of sentence affirmed.

5. Appellant was sentenced pursuant to 18 Pa.C.S. § 1102(a), *as amended*, which provides for mandatory life imprisonment for a conviction of murder of the first degree.