460 A.2d 725

**COMMONWEALTH of Pennsylvania**

v.

**James T. FRENCH, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 28, 1983.

Decided May 27, 1983.

Peter C. Bowers, (court-appointed), Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Marianne Cox, Asst. Dist. Attys., Philadelphia, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

ROBERTS, Chief Justice.

This is an appeal from a judgment of sentence of imprisonment of eleven and one-half to twenty-three months imposed by the Court of Common Pleas of Philadelphia on a jury's verdict of guilty of voluntary manslaughter. Appellant, James French, seeks a new trial on the basis of several allegations of trial error, none of which warrants relief. Hence we affirm.

Appellant's conviction stems from the shooting death of John Kerwood, who was found dead in the rear parking lot of a high school on September 24, 1979. The evidence at trial established that on the evening of the shooting, after engaging in an argument at a nearby shopping mall, appellant and Kerwood agreed to meet in the school's parking lot to have a "fair fight." Shortly after the two went to the rear parking lot, their companions, who had accompanied them to the school, heard the sound of several gunshots. Upon arriving at the scene, the companions found the body of Kerwood, who had been shot twice. Appellant was nowhere to be found.

Appellant was subsequently apprehended and charged with murder, voluntary manslaughter, and possession of an instrument of crime. At trial, the Commonwealth proceeded on the theory that appellant had entered the parking lot carrying a gun and had shot Kerwood intentionally. Appellant took the stand in his own defense and maintained that it was Kerwood who had been carrying a gun, that Kerwood had threatened him with it, and that, after a struggle over control of the gun, in which appellant had managed to disarm Kerwood, he had shot Kerwood after Kerwood had lunged toward him. Appellant admitted that he had shot Kerwood a second time after Kerwood had fallen from the first shot. The jury found appellant guilty of voluntary manslaughter and not guilty of murder and possession of an instrument of crime.

While post-verdict motions filed by trial counsel were pending, new counsel was appointed, who argued the pending motions previously filed by trial counsel as well as motions filed pro se by appellant. As of the date of sentencing, appellant had already served the minimum term of imprisonment imposed. Parole was granted, along with a probationary term of eight years.

Appellant challenges, on evidentiary grounds, the Commonwealth's use of two written statements which were given to police by Kathy Gorski and Jeffrey Gitler, companions of appellant who had been with appellant on the evening of the shooting. In preliminary statements to police, Gorski and Gitler maintained that they lacked knowledge of the details of the incident. In a subsequent statement, however, Gorski told police that she "was pretty sure" that she had seen someone pass a gun to appellant at the shopping mall after the argument between appellant and Kerwood. Gorski added that appellant twice had said, "I'm going to kill him." Gitler, in his second statement, told police that, while en route to the high school, he had seen appellant load a gun and had heard appellant say, "I'm gone [sic] to kill him. He's gone to pay for what he did." In the same statement Gitler also told police that appellant owned a gun.

At trial, the Commonwealth called Gorski as its witness. On direct examination, after having been given an opportunity to review her statement, Gorski testified that she had seen someone pass appellant a gun at the shopping mall. Cross-examination followed immediately, in which Gorski, at the request of defense counsel, read the jury the above-quoted portion of her statement. Upon further examination, Gorski claimed that she had been questioned for several hours, "harassed," "threatened," and told that she was "going to jail." Gorski also testified that she had made the statement only to "get out" of police headquarters. In rebuttal, the Commonwealth called the detective who had interviewed Gorski. After testifying that Gorski had not been threatened or otherwise coerced, the detective read the jury the entire statement, including a portion in which Gorski responded to the detective's question, "Why didn't you tell us the truth before about what you seen?" by saying that she had been "scared, didn't want to get involved." The detective described Gorski as having been calm, repeated that Gorski had not been threatened in any way, and specifically denied that Gorski had been told that she would "wind up in prison" if she "didn't talk about the gun."

At the close of examination of Gorski, the Commonwealth called Gitler as its next witness. On direct examination, while Gitler was examining his second statement to refresh his recollection, Gitler described the statement as "a statement they kind of forced out of me with force." Gitler went on to state that, before he had given this statement, "about three or four" investigating detectives

"were telling me I wouldn't like it in prison too much and I would turn queer, and telling me they were gone to hang me for accessory to murder. And then they started suggesting like things I saw. They suggested like a gun to me and they start describing it. So it was getting late and I wanted to go home."

After establishing that Gitler had not been "hit" by any of the detectives, the Commonwealth concluded direct examination. On cross-examination, Gitler testified that he had made the statement because "I wanted to go home and I

wanted to go to work, plus I seen they had no intentions of letting me go." Gitler added that he considered the statement to be "mostly incorrect." In rebuttal, the Commonwealth called the detective who had taken Gitler's statement. After testifying that Gitler had not been "threatened, abused, told he'd be locked up, [or] in any way coerced," the detective read the statement to the jury. The prosecuting attorney interrupted the detective's reading of the statement to establish that at the time of the statement the detective had known nothing about personal matters pertaining to appellant, such as appellant's employment and the names of appellant's friends, matters which had been discussed in detail in the statement.

The Commonwealth could not introduce the written statements of Gorski and Gitler on direct examination, as it is clear from the record that both witnesses were able to testify as to the content of their statements from their recollections. See generally *Commonwealth v. Cooley,* 484 Pa. 14, 21–22, 398 A.2d 637, 641 (1979), quoting McCormick on Evidence § 299 at p. 712 (2d ed. 1972) (witness must "lack a present recollection of the event" to justify admission of record of past recollection). However, after the cross-examination of both witnesses, in which the defense sought to develop the witnesses' claims that they had been coerced into making their statements, it was manifestly proper for the Commonwealth to impeach the credibility of each witness with his or her prior statement. Contrary to Gorski's trial testimony, Gorski's statement acknowledged that she had been withholding the truth before giving the statement, because she had been "scared" and "didn't want to get involved." See, e.g., *Commonwealth v. Manning,* 495 Pa. 652, 435 A.2d 1207 (1981). Although Gitler's statement was not similarly inconsistent with Gitler's trial testimony, the statement did contain a detailed account of several personal matters pertaining to appellant. Thus, it was proper for the Commonwealth to rebut Gitler's testimony that the statement had been "suggested" to him by introducing evidence that the detective who had interviewed Gitler had had no familiarity with appellant's personal affairs.

Although appellant contends that the statements were used as substantive evidence in support of the crimes charged, the court's charge to the jury made it clear that the statements had been used and could be considered only for the limited, proper purpose of assessing the witnesses' credibility. Finally, although appellant also contends that the statements were the product of police coercion and hence inadmissible because involuntarily made, at no stage in the proceedings has appellant established that coercion did in fact occur.*

As appellant has established no basis for relief, the judgment of sentence is affirmed.

Judgment of sentence affirmed.

McDERMOTT, J., did not participate in the consideration or decision of this case.

---

* We have considered appellant's remaining contentions that he was prejudiced by (1) alleged displays of emotion during trial by the victim's mother; (2) the court's reading of the testimony of the Commonwealth's medical expert to the jury; (3) the court's instruction to the jury on the possible verdicts; and (4) the Commonwealth's cross-examination of a defense witness on the basis of remarks attributed to the witness in a magazine article. Like the contentions addressed in text, none of these contentions warrants relief.