476 A.2d 414

**COMMONWEALTH of Pennsylvania**

v.

**Walter FLOYD, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 12, 1984.

Filed April 19, 1984.

Reargument Denied July 2, 1984.

Petition for Allowance of Appeal Granted Oct. 1, 1984.

Joel S. Moldovsky, Philadelphia, for appellant.

Kenneth S. Gallant, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CAVANAUGH, McEWEN and CIRILLO, JJ.

CAVANAUGH, Judge:

Appellant, Walter Floyd, was convicted by a jury of first degree murder in the shooting death of Conway Ennis. He was given life imprisonment and a sentence of eleven and one-half to twenty-three months on a weapons offense. The conviction took place just two weeks short of two years after the homicide; the Commonwealth contending that Floyd avoided arrest for a year and a half before surrendering himself. Ennis was shot during the early morning hours while engaged in a card game in the basement of a house. It was the Commonwealth's contention that Floyd came to the house where a social gathering was taking place and shot Ennis when he was rebuffed in his efforts to join the card game. Crucial to the Commonwealth's case was evidence from Michael Alexander, including a written statement made by him to the police and evidence of a subsequent photo identification of appellant made by him.

■ Appellant's first contention on appeal centers about the admissibility of the Alexander photo identification evidence. We conclude that it was error to permit homicide detective George Harris to testify that Alexander had picked out Floyd as the perpetrator through the photo identification.

In order to assess the Harris testimony, we must first examine the developments during the course of the direct examination of witness Alexander. Alexander, called by the Commonwealth, stated that he was at a party on September 15, 1979 at 5150 Wakefield Street and that between 3:00 and 3:30 A.M., the deceased was shot. When asked if he saw the person who shot him, he replied "[n]ot really, no" and, thereafter offered that he had given a statement. Following an objection to this, there was a side bar conference wherein the assistant district attorney advised the court that he was seeking to lay a foundation as to "prior recollection recorded." Resuming his testimony, Alexander stated that he spoke with police the morning following the

shooting. Alexander related that the story he gave the police was "supposedly right." Defense counsel asked if the district attorney was pleading surprise and the reply was that he was not, rather, he was trying to "refresh the recollection." The statement was marked as an exhibit and it was established that the witness had signed his name at the bottom of each of the six pages. The witness perused the statement and replied "yes" when asked if the statement helped "bring back to you the events leading up to the shooting of Conway Ennis." He testified that he was playing cards with Ennis; that it was dark, and somebody came up and wanted to play cards; that Ennis didn't want the person to play and that there was a shooting and the shooter ran away. As the testimony proceeded, the witness was again referred to his statement to "refresh your recollection." Later, the witness read from the statement his description of the person who approached while he was playing cards with Ennis. He described him as an "unknown man" and gave his physical characteristics, which apparently resembled those of defendant. The district attorney then proposed to read pages 1, 2, 3, 5 and 6 of the statement into the record as "prior recollection" recorded. With the court's permission, after certain portions were deleted, the statement was read to the jury. In the statement, Alexander described the shooting in some detail but did not identify the shooter although he stated that he would be able to identify him if he saw him again. Finally, the witness stated that he could not identify the person who shot Conway Ennis.

We have detailed this direct examination in order to establish:

1. Alexander did not identify defendant in court.

2. Alexander did not identify defendant in his written statement, but therein stated that he could identify the assailant if he were to see him again.

3. The Commonwealth did not claim surprise during Alexander's direct testimony.

4. Alexander's written statement was used both to refresh his recollection and as past recollection recorded. (For purposes of this appeal we may assume that it was properly read into evidence.)

5. There was no testimony from Alexander as to a subsequent photo identification procedure.

On cross-examination Alexander gave the following pertinent testimony:

Q. Did you ever identify this defendant before?
A. No.

. . . . .

Q. [I]s this not the man that did the shooting?
A. I don't think so.

On redirect examination the Commonwealth attempted to impeach Alexander's credibility, but again made no reference to the photographic identification. Defendant's objection to this line of questioning was eventually sustained by the trial judge.

Later in its case the Commonwealth called Detective George Harris as a witness. He stated that he interviewed Alexander at his home later on the day of the shooting, and that Alexander then picked out Floyd's picture from an array of seven photographs and stated that he was the man who shot Ennis. The photograph was signed by Alexander and dated 9/15/79, 8:05 P.M. It was admitted in evidence and eventually was given to the jury during its deliberations.

· In his charge to the jury, the trial judge reviewed the photographic identification of defendant by Alexander. But he did not state that this evidence was admitted only to aid the jury in assessing Alexander's credibility. Nor did he instruct the jury that it should not consider the photographic identification as substantive evidence of defendant's guilt.

■ We believe that it must be concluded that the jury did consider this testimony as substantive evidence of defendant's guilt. It was the only evidence that anyone

specifically identified defendant as the killer. If its admission was error, as we think it was, defendant is entitled to a new trial.

■■■ In ordinary circumstances, a party is entitled to impeach the credibility of an adverse witness, including a witness who becomes adverse as a result of answers elicited by his opponent's cross-examination. A classic means of impeaching the credibility of a witness is to introduce a prior inconsistent statement that was made by the witness. *See Commonwealth v. Brown*, 302 Pa.Super. 391, 398–403, 448 A.2d 1097 (1982).

The problem in this case arises because the Commonwealth, in violation of Pa.R.C.P. 305(B)(1)(d), failed timely to notify defendant that it possessed evidence that Alexander had identified defendant's photograph as a picture of the killer.[1] As a result, defense counsel, unaware of the pitfall awaiting him, asked Alexander on cross-examination whether he had ever identified defendant before and whether defendant was the man who did the shooting. We have no doubt that if defense counsel had been apprised that the Commonwealth had in its possession a photograph of defendant which had been identified by Alexander as the killer, and which further had been signed by Alexander on the back, he would never have engaged in such a perilous and self-destructive cross-examination. The testimony thus elicited by an unknowing defense counsel cannot justifiably be used by the Commonwealth as a predicate for its introduction of the prior statement of identification made by Alexander. Because defendant's counsel was lulled into opening the door to its admissibility by the Commonwealth's failure to disclose its existence in accordance with court rules, a new trial is required.

**1.** There was extensive argument on the record—the Commonwealth contending that at the outset of trial defense counsel was told that there were "photographic identifications." But it does not appear that counsel was told that there was a photo identification by Alexander or a statement concerning the identification from Detective Harris.

The commonwealth also contends that Alexander's identification of defendant's photograph was admissible as substantive evidence. We disagree, and since this evidence could only have been considered by the jury substantively, would conclude that a new trial is warranted thereby.

■ If an out-of-court assertion, be it one of identification or otherwise, is offered in evidence to prove its truth, it is hearsay. Therefore, it is excludable unless it qualifies for some exception to the hearsay rule. Alexander's identification of defendant's photograph does not so qualify.

The federal courts and most states now recognize an exception to the hearsay rule for a prior statement of identification. *See*, D. Binder, *Hearsay Handbook* §§ 34.02 and 34.03 (2d ed. 1983).

A leading case is *People v. Gould*, 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d 865, 867 (1960) in which the court explained:

> Evidence of an extra-judicial identification is admissible, not only to corroborate an identification made at the trial ... but as independent evidence of identity. Unlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached ... evidence of an extra-judicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind.... The failure of the witness to repeat the extra-judicial identification in court does not destroy its probative value, for such failure may be explained by loss of memory or other circumstances. The extra-judicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination.

But the foundation necessary to qualify a prior statement of identification for exception to the hearsay rule differs among the jurisdictions. In *Commonwealth v. Saunders,* 386 Pa. 149, 155, 125 A.2d 442 (1956), the court, affirming a conviction of murder, approved admission of testimony from three witnesses who could not identify defendant at trial that they had identified him in a police lineup that was held two days after the crime. However, the court approved admission of this testimony in a single paragraph that did not attempt to set forth the foundational requirements for this exception to the hearsay rule. (Judge Musmanno discussed the matter for ten pages, but he was dissenting.)

The reason for excepting any particular category of out-of-court statement to the hearsay rule is because experience shows that it is substantially more trustworthy than hearsay in general. We think that a fresh statement of identification made soon after a crime or other occurrence by a witness thereto is substantially more trustworthy than hearsay in general *only* if the witness vouches for the identification under oath at trial. Absent this important indicium of trustworthiness, we do not think that it merits exception to the hearsay rule.

In our view, a prior statement of identification made by a witness who does not make an in-court identification at trial qualifies for exception to the hearsay rule only if (1) the out-of-court identification was freshly made, and (2) the witness who made it takes the stand and vouches for its accuracy. *See* Cal.Evid.Code § 1238 (West 1966). (In addition, when offered against defendant in a criminal case, the witness must be subject to adequate cross-examination in order to satisfy defendant's constitutional right to confront the witness against him.)

In this case, Alexander's prior statement of identification was made the day following the murder. Therefore, the foundational requirement of freshness is satisfied. But Alexander did not testify that the identification that he

made to Detective Harris was a truthful one. Thus, the second foundational requirement for this exception to the hearsay rule has not been met.

Alexander signed defendant's photograph at the time that he identified it as a picture of the killer, according to Detective Harris. But it does not qualify for exception to the hearsay rule as recorded recollection because of the same failing that disqualifies it for exception as a prior statement of identification, i.e., Alexander did not vouch for its truthfulness under oath at trial.

■ Alexander's photographic identification of defendant cannot qualify for exception to the hearsay rule as a prior inconsistent statement, since Pennsylvania follows the common law rule that a prior inconsistent statement is admissible only to impeach the credibility of a witness and does not constitute substantive evidence. *See Commonwealth v. French*, 501 Pa. 134, 460 A.2d 725 (1983); and *Commonwealth v. Waller*, 498 Pa. 33, 444 A.2d 653 (1982).

The Commonwealth's reliance on *Commonwealth v. Dean*, 300 Pa.Super. 86, 89, 445 A.2d 1311 (1982); *Commonwealth v. Sanders*, 260 Pa.Super. 358, 364–366, 394 A.2d 591 (1978); and *Commonwealth v. Dugan*, 252 Pa.Super. 377, 383–386, 381 A.2d 967 (1977) (Spaeth, J. concurring), is misplaced. The majority opinion in the *Dugan* case approved admission of a sketch of defendant drawn at the direction of a victim of a rape approximately two to three hours after the crime as a *res gestae* statement. The *Sanders* and *Dean* cases admitted prior statements of identification by victims of crimes, each of whom identified the defendant in court. They were thus prior consistent (consonant) statements. Whether all, some, or no prior consistent statements should be considered substantive evidence, as distinguished from corroborative evidence only, is an issue that is not relevant to this case.

Judgment of sentence reversed. New trial granted.