**COMMONWEALTH of Pennsylvania**

v.

**Jane FAUST, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 7, 1997.
Decided Nov. 17, 1997.

Samuel C. Stretton, West Chester, for appellant.

David W. Zellis, Chief Deputy Dist. Atty., Doylestown, for appellee.

Before McGINLEY and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Faust appeals from the judgment of sentence of the Court of Common Pleas of Bucks County (trial court) dated September 20, 1996 that sentenced Faust to one (1) year probation with the last nine (9) months to be non-reporting and to disenfranchisement for a period of four (4) years. Trial court imposed the above sentence after a jury found Faust guilty of violating Sections 1813 and 1814 of the Election Code (Code).[1]

In early 1996, Faust was running as a Republican candidate in the general primary election for the office of "committeewoman" for the Upper 5 District of Bensalem Town-

---

1. Act of June 3, 1937, P.L. 1333, 25 P.S. §§ 3513, 3514. This case was originally appealed to the Superior Court, which transferred the appeal to this Court. Pursuant to 42 Pa.C.S. § 762(a)(4)(i)(C), the Commonwealth Court has appellate jurisdiction over all actions "where is drawn in question the application, interpretation or enforcement of any ... statute relating to elections, campaign financing or other election procedures." Our research has failed to reveal any prior appeals from criminal convictions to this Court and it is unclear whether a criminal conviction was intended to be included in this category of cases. Since no party has objected to our jurisdiction, we retain jurisdiction to decide the matter pursuant to 42 Pa.C.S. § 704 and Pa. R.A.P. § 741.

ship in Bucks County, Pennsylvania. To have her name printed on the official ballot, Faust had to file a nomination petition containing ten (10) signatures of Republican electors in the district. On February 11, 1996, Faust appeared before a notary public. At that time, Faust signed and swore to two (2) affidavits that were a part of her nomination petition. The Affidavit of Circulator that Faust signed and swore to stated in pertinent part:

> [T]he undersigned, who, being duly sworn according to law, did depose and say that ... the signers to the foregoing petition signed the same with full knowledge of the contents thereof; ... that each signed on the date set opposite his or her name; and that to the best of deponent's knowledge and belief, the signers are qualified, registered and enrolled electors of the designated party of the aforesaid political district.

The Candidate's Affidavit that Faust also signed and swore to provided in pertinent part:

> [T]he undersigned, who, being duly sworn according to law, did depose and say that ... the name of the office for which he or she consents to be a candidate is Republican committeewoman[;] that he or she is eligible for said office; that he or she will not knowingly violate any election law, or any law regulating and limiting nomination and election expenses, and prohibiting corrupt practices in connection therewith.

On February 12, 1996, Faust officially filed her nomination petition with the Bucks County Board of Elections at the Bucks County Courthouse. Faust's petition included the two (2) affidavits and the signatures of fifteen (15) Republican electors.

On February 26, 1996, the Bensalem Township Council conducted a public meeting. During the meeting, Faust admitted to signing the name of George Worthington on line 15 of her nomination petition. While Faust was collecting signatures for her petition, George Worthington was in a Philadelphia hospital recovering from heart bypass surgery. Later, Faust admitted that the names of three (3) other electors on her nomination petition, including Gustav and Margaret Fuscellaro and Vicky–Lyn Gor-

man, were not legitimate. These three (3) signatures appeared on lines 14, 13 and 5, respectively, of Faust's petition.

At trial, Faust testified that she signed the Fuscellaros' names and George Worthington's name to her petition with their permission. The Fuscellaros testified at trial that they gave Faust permission to sign their names to her petition. Mrs. Worthington testified that she was aware that Faust had signed Mr. Worthington's name to her petition. Faust also testified that neither she nor Ms. Gorman signed Ms. Gorman's signature to the petition. Rather, Ms. Gorman testified that her mother signed Faust's petition on behalf of Ms. Gorman. Faust also admitted at trial that she swore to the affidavits with full knowledge of their contents. Thus, Faust filed her nomination petition and affidavits knowing that four (4) of the signatures in her petition were not legitimate signatures.

 First, Faust argues that the verdict was against the weight and sufficiency of the evidence. In support of her argument, Faust contends that there was no knowing and fraudulent intent to violate the Code. On the contrary, Faust believed that she could sign the names of electors to her nomination petition if the electors gave her permission. Faust also claims that signing an elector's name with permission was a common political practice that had occurred for many years.

 A new trial should be granted on grounds that the verdict is against the weight of the evidence only when the verdict is so contrary to the evidence as to shock one's sense of justice. *Downs v. Commonwealth*, 150 Pa.Cmwlth. 455, 616 A.2d 39 (1992). The test for a challenge to the sufficiency of the evidence is whether, "viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt." *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988). After a thorough review of the record in this case, we find that the jury's verdict was not

against the weight or sufficiency of the evidence.

Faust was convicted of violating Section 1813 of the Code, 25 P.S. § 3513, and Section 1814 of the Code, 25 P.S. § 3514. Section 1813 provides in pertinent part:

> If any person shall knowingly make a false statement in any affidavit required by the provisions of this act, to be appended to or to accompany a nomination petition or nomination paper, or if any person shall fraudulently sign any name not his own to any nomination petition or nomination paper, or if any person shall fraudulently alter any nomination petition or nomination paper without the consent of the signers, he shall be guilty of a misdemeanor....

25 P.S. § 3513. Section 1814 of the Code provides in pertinent part that "[a]ny person who shall falsely make any nomination certificate or ... who shall file any nomination petition, nomination certificate or nomination paper or letter of withdrawal knowing the same, or any part thereof, to be falsely made, ... shall be guilty of a misdemeanor...." 25 P.S. § 3514.

Faust admitted at trial that she knowingly signed the names of three (3) electors, including George Worthington and Mr. and Mrs. Fuscellaro, on her nomination petition and that she was aware that Ms. Gorman's signature was not genuine because it was signed by her mother. Although Faust knew that four (4) out of the fifteen (15) signatures on her petition were false, Faust still appeared before a notary and signed and swore to the two (2) affidavits in question. Faust then filed her petition and the two affidavits with the Board of Elections. Moreover, George Worthington's wife, the Fuscellaros and Ms. Gorman all testified at trial that they did not sign Faust's petition. Based on the evidence, the jury's verdict was not contrary to the weight or the sufficiency of the evidence.

■ However, Faust maintains that she did not violate Section 1813 or Section 1814 of the Code because the four (4) electors

gave her permission to sign their names to her petition. Faust claims the permission negated any fraudulent intent on her part. We disagree. Permission is not a defense under the Code or common law.[2] Although Faust asserts that her actions were legal because signing another person's name to a petition is a common political practice, we recognize that the commonality of a practice does not rectify its criminality. The jury was certainly free to find that Faust's conduct was fraudulent based on the evidence presented. We will not disturb the verdict.

■ Faust next argues that her trial counsel was ineffective for a number of reasons. In order to prevail on a claim of ineffectiveness of counsel, an appellant must show that the underlying claim is one of arguable merit; that trial counsel's course of action did not have a reasonable basis designed to further appellant's interests; and that appellant was prejudiced by trial counsel's action or inaction. *Commonwealth v. Smith*, 539 Pa. 128, 650 A.2d 863 (1994).

■ Faust first argues that trial counsel was ineffective for not objecting to improper and inflammatory statements in the prosecutor's closing argument. In support, Faust points out several excerpts from the prosecutor's closing argument that should have prompted trial counsel to move for curative instructions or a mistrial. However, we must review Faust's claim by considering the context of the entire summation, including the closing arguments of the prosecutor and trial counsel and the closing instructions of the trial court.

Trial counsel's closing argument in this case urged the jury to acquit Faust of the charges based on the fact that she had the authority of the electors to sign their names. Trial counsel admitted that Faust technically violated the law and exercised poor judgment but still asked the jury to find that she did not knowingly make a false statement. Thus, trial counsel essentially suggested that permission was a defense and that Faust should be acquitted based on her years of political service. Faust also argued during

---

**2.** Because permission is not a defense, Faust's argument that the trial court should have charged the jury on a permission defense lacks merit.

trial that her prosecution was the result of the political motivations of her political opponent, Eddie Davis, and the District Attorney. In this context, trial counsel's failure to object or move for a mistrial was reasonable because the prosecutor was permitted to respond to defense counsel's arguments.

■ Although certain comments made by the prosecutor in his closing arguments may be considered improper, trial counsel objected when necessary and trial court sustained the objection. For instance, trial counsel objected to the prosecutor's statement that: "This is the kind of stuff, ladies and gentlemen, that makes for dirty politics. This is the reason why you or your children are so disgusted with politics." (R.R. at A–295). Because the prosecutor's comments went beyond the evidence, trial court properly sustained the objection. Trial court also properly instructed the jury to make their decision based on the evidence and that the attorneys' arguments were not part of the evidence. Based on our review of the record and the entire context of the closing arguments and jury instructions, we are satisfied that trial counsel was not ineffective.

■ Faust claims that trial counsel was ineffective for not objecting to the testimony of the District Attorney. The Commonwealth presented the District Attorney as a rebuttal witness in order to impeach the testimony of Faust and Ms. Gorman. A party is entitled to impeach the credibility of an adverse witness, including a witness who becomes adverse as a result of answers elicited on cross-examination, by means of that witness's prior inconsistent statement. *Commonwealth v. Floyd*, 327 Pa. Superior Ct. 569, 476 A.2d 414 (1984), *affirmed*, 508 Pa. 393, 498 A.2d 816 (1985). Here, Faust was an adverse witness and denied saying certain things to the District Attorney in a telephone conversation. Thus, the Commonwealth was permitted to impeach her with prior inconsistent statements she made to the District Attorney. Although Ms. Gorman was a Commonwealth witness, she became an adverse witness subject to impeachment by the Commonwealth. On direct examination, Ms. Gorman testified that she never told the detective that she signed Faust's petition and

that Faust had permission to sign her name. However, the District Attorney testified that Ms. Gorman told him that she originally lied to protect Faust. Thus, the District Attorney's testimony was proper rebuttal testimony and trial counsel was not ineffective for failing to object.

■ Faust next argues that trial counsel was ineffective for not objecting to the District Attorney's testimony concerning an improperly authenticated telephone conversation with Ms. Gorman. Our review of the testimony of Ms. Gorman, however, reveals that Ms. Gorman admitted that she spoke to the District Attorney. Ms. Gorman also testified that the District Attorney told her to tell the truth. The District Attorney testified that he told Ms. Gorman to tell the truth during their phone conversation. Based on the testimony of the District Attorney and Ms. Gorman, we find that trial counsel had a reasonable basis for not objecting to the testimony regarding the phone conversation.

■ Faust also contends that trial counsel was ineffective because he admitted in his closing argument that Faust may have technically violated the law. This argument is without merit. Faust admitted on cross-examination at trial that she knew four (4) of the signatures on her nomination petition were not signed by those four (4) electors. She also admitted that she signed and swore to the Affidavit of Circulator and the Candidate's Affidavit knowing that four (4) signatures were false. Finally, she admitted that she filed her petition knowing that it contained false signatures. In light of Faust's admissions, trial counsel had little choice but to admit that Faust may have technically violated Sections 1813 and 1814 of the Code. However, trial counsel then pursued a reasonable course of defense by asking the jury to find that Faust lacked the necessary mental state of fraud because she had permission and that she engaged in a common political practice.

■ Faust further contends that trial counsel was ineffective for not filing a motion to compel Faust's admission to the Accelerated Rehabilitative Disposition Program (ARD). However, we recognize that the de-

cision whether to admit an individual to ARD is a matter solely within the discretion of the district attorney. *Commonwealth v. Lutz,* 508 Pa. 297, 495 A.2d 928 (1985). Thus, Faust's claim based on ARD is without merit.

Finally, Faust asserts that trial counsel was ineffective for failing to raise the issue of selective prosecution. To make a case for selective prosecution, a defendant "must prove the element of intentional and purposeful discrimination ... [and] the mere failure of authorities to prosecute others similarly situated does not constitute a violation of due process or equal protection rights." *Commonwealth v. Phillips,* 248 Pa. Superior Ct. 400, 404, 375 A.2d 158, 160 (1977) (citations omitted). After a review of the record, we find that Faust has failed to show that she was prosecuted for any reason other than her violations of the Code. Faust failed to allege that other individuals violated the Code but were not prosecuted by the District Attorney. Although Faust asked the District Attorney to investigate Eddie Davis for making threats, the District Attorney is not obligated to respond to every request for an investigation. The failure of the District Attorney to prosecute Faust's political opponent did not establish selective prosecution. As a result, trial counsel's decision not to pursue the selective prosecution issue was reasonable.

Accordingly, we affirm.

### ORDER

AND NOW, this 17th day of November, 1997, the judgment of sentence of the Court of Common Pleas of Bucks County, dated September 20, 1996, is hereby affirmed.

