# Rabinowitz *v.* Silverman, Appellants.

*Evidence—Impeachment of witness—Evidence of compromise.*

1. While an offer of compromise is not admissible as evidence of liability, the distinct admission of a fact by one of the parties is not to be excluded because it was made in connection with a proposition looking to a compromise. There is less reason for excluding the proof of a statement by a witness in conflict with his testimony at the trial because in the same conversation a compromise is suggested.

2. The right to discredit a witness by proof of contradictory statements without having first called his attention to them, is a matter that rests in the sound discretion of the court.

3. A failure to lay a foundation for the impeachment of a witness, becomes immaterial if the witness is recalled and given an opportunity to explain or reconcile an alleged statement made by him with his testimony.

Argued Oct. 22, 1908.   Appeal, No. 94, Oct. T., 1908, by defendants, from judgment of C. P. No. 1. Allegheny Co., June T., 1903, No. 361, on verdict for plaintiff in case of Louis L. Rabinowitz v. Tanhel Silverman et al. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Scire facias sur mortgage.   Before FORD, J.

At the trial when the plaintiff was on the stand in rebuttal plaintiff's counsel proposed to prove by the witness an admission made by Victor Silverman, the son of defendant in this case, as to the indebtedness existing from Mr. Silverman to Mr. Rabinowitz, to wit : That on or about September 24, 1907, when the testimony of Mrs. Amy S. Barrimore was being taken on deposition at the office of W. O. McNary, Esq., in the Frick building, there were present the notary public, the stenographer, Mr. Langdon, S. S. Robertson and W. O. McNary, attorneys for Tanhel Silverman, Tanhel Silverman, himself, Victor Silverman, his son, Mrs. Barrimore and H. S. McKinley, representing George C. Burgwin and Mr. Rabinowitz.

That after the testimony was all taken, and Mr. Rabinowitz was about to leave the office and was standing with Mr. McKinley, Victor Silverman walked up to Mr. McKinley and asked him if he, Victor Silverman, could have a talk privately with Mr. Rabinowitz.   That Mr. McKinley told him he did not see any reason why not.   Victor Silverman then asked Mr. Rabinowitz to go into one of the private offices, of which there were two.   That after Victor Silverman and Mr. Rabinowitz got into this office and were alone, Victor Silverman closed the door and said to Mr. Rabinowitz, " Did you hear Mrs. Barrimore's testimony ? "  Rabinowitz said, " Yes."   Victor said, " The same thing I will swear to, and the same thing

my uncle will say.   Now would you like to get $6,000 with your counsel's fees, or would you like to continue the case? That is all the money my father has to pay, and he cannot pay any more."   Rabinowitz told him, "No, I cannot do it." I told him I gave $10,000 to your uncle.   Victor says, "We know that everybody lost money on him, and I don't know why you should not lose some of the money."

Then Rabinowitz told him, "I cannot give you an answer now, but I will let you know before I go to New York." Victor said to him, "Well, let me know."   I said, "Yes." He said, "Where."   I said, "Where would like to have it?" He said, "In Rabinowitz's brother's office."   Rabinowitz told him all right, that he would send for Victor on Saturday before he went to New York.   That before Rabinowitz left the office Victor Silverman said to him, "If you will mention anything in court that we spoke of together, then I will swear I never said anything."

Further, that Mr. Rabinowitz left this office and went to Mr. Burgwin's office, and saw Mr. McKinley, and told Mr. McKinley in the presence of Miss Wylie, Mr. Burgwin's stenographer, what was said.   That Mr. McKinley told Mr. Rabinowitz that he had better wait until Mr. Burgwin came home from the east, and talk about the matter with him.

That when Mr. Burgwin came home on Friday, Mr. Rabinowitz told the circumstances, and Mr. Burgwin told him it was for Mr. Rabinowitz to decide.

That on Saturday morning about ten o'clock Rabinowitz came over to his brother's office, and told those there that he would like to send for Victor Silverman.   That his brother's boy went to Silverman's house, and said to Victor Silverman, "My uncle would like to see you."   That Victor said, "Go home, and I will be there inside of ten minutes."   That after ten minutes passed, the bell rang, they opened the door, and a little girl came to the door.   The little girl asked for Mr. Rabinowitz.   Mr. Rabinowitz came out into the hall, and said, "What do you want to see me for?"   The little girl said, "My mother wants to see you."   She said Mrs. Silverman. Mr. Rabinowitz said, "I don't know Mrs. Silverman, and I don't have anything to talk to Mrs. Silverman about."   That Rabinowitz sat in the house until one or two o'clock and left

for Mr. Burgwin's office. When he got to the office, Mr. Burgwin's office boy said, " Just now the telephone bell rang ; someone wanted to see you and said in case you came you should wait in the office." That Rabinowitz waited in the office about half an hour and the telephone rang again, and when he came to the telephone Victor Silverman was on the telephone. That Victor Silverman said, " Are you Mr. Rabinowitz ?" Mr. Rabinowitz said, " Yes." " Will you please come to your brother's office, I want to see you ? " Rabinowitz told him all right, he would be there in half an hour. That when he came into his brother's office Victor Silverman was waiting for him in the front office. That Victor said to him, " Have you made up your mind to anything ? " Rabinowitz told him, he had not made up his mind at all. Then Victor repeated the same thing, and said, " Well, you had better take the $6,000 with your counsel's fees, for otherwise we will go ahead and fight the case."

This offer was made at side bar.

Objected to by the defense as incompetent and irrelevant, partly hearsay and partly immaterial.

The Court : Portion of the offer relating to the acknowledgment of the indebtedness of Mr. Silverman, at the termination of the taking of Mrs. Barrimore's testimony, might be competent ; outside of that, the balance is clearly incompetent. The objection to the offer as at present made is sustained. Exception noted to plaintiff.

Mr. McKinley : Then we offer so much of the foregoing offer, to wit : The conversation which occurred between Mr. Rabinowitz and Mr. Silverman at the time mentioned in the foregoing offer, in which there was an acknowledgment of indebtedness, or tending to show an acknowledgment of indebtedness through Mr. Silverman to Mr. Rabinowitz.

Objected to by the defense as incompetent and irrelevant. For a further reason that, on any theory of agency, it could not be anything but an offer of compromise ; for a further reason, that no ground has been laid for contradiction of the witness.

The Court : The objection is overruled and the testimony admitted in so far as it relates to anything said by Victor Silverman in recognition to the existing indebtedness secured by

the mortgage.    But all testimony in relation to any offer by the way of compromise made is excluded.

Exception noted by the defense.

Mr. McKinley : " Q. Mr. Rabinowitz, were you in McNary's office on or about September 24, 1907, when the deposition of Mrs. Amy Barrimore was taken in this case ?    A. Yes, sir. Q. Will you state who was present there ?    A. Mr. McNary, Mr. Robertson, Mrs. Barrimore, Mr. Tanhel Silverman, Mr. Victor Silverman and myself, Mr. McKinley and Miss Wylie, the stenographer.    Q. Did you have any conversation with Victor Silverman after the testimony was taken ?    A. Yes, sir.    Q. Please tell us how that occurred ? "

The Court :  " Was that in the presence of these parties whose names you have given, Mr. Robertson and the rest of them ? "

Mr. McKinley : This part I am asking about was in the presence of all these parties.

Mr. McKinley : " Q. What occurred there ?    A. After the testimony was taken and everybody was going to go home, Victor Silverman said to Mr. McKinley, ' I would like to see Mr. Rabinowitz.'    He said, ' You can see him if you want.' He called me into his, McNary's, private office and closed the door.    Q. He called you into the private office and closed the door ?    A. Yes, sir.    Q. Then what did he say ?    A. He says to me, ' Did you hear Mrs. Barrimore's testimony ? '  I told him I did."

Objected to by the defense.

" Q. Have you testified that Mr. Victor Silverman and you went into this private office together ?    A. Yes, sir.    Q. Now, you had some conversation there for a few minutes, didn't you ?    A. Yes, sir.    Q. And after this conversation what did you say to Victor Silverman and what did he say to you about this mortgage ?    A. I told him, ' You know your uncle owes me $10,000.'    He said to me. ' We know all that.'    That is what he says to me.    ' But,' he says, ' Everybody lost money on him, and I don't see why you shouldn't lose any.'    Then I told him, ' I cannot do it.'    He says, ' My father has $6,000.'—Q. Don't tell us that.    That would not be admissible under the rulings."

Verdict and judgment for plaintiff for $13,782.99.    Defendants appealed.

*Error assigned* was rulings on evidence, quoting the bill of exceptions.

*S. S. Robertson*, with him *W. O. McNary*, for appellants.

*Harry S. McKinley*, with him *H. & G. C. Burgwin*, for appellee.

OPINION BY MR. JUSTICE FELL, January 4, 1909 :

This was a scire facias on a mortgage. The defense was that only a part of the consideration named in the mortgage had been received by the mortgagor, and that this had been repaid by him. At the trial the defendant's son testified that he was present when the repayment of the money was made and that the mortgagee had promised to satisfy the mortgage the next day. In rebuttal testimony was received under objection that this witness after the date of the payment alleged had stated that he then knew that his father owed the whole amount of the mortgage. The witness was afterwards recalled and testified that he had made no such statement.

The objections urged to the admission of this testimony were that the statement, if made, was in connection with a compromise offered, and also that ground had not been laid for contradiction of the witness by first calling his attention to the subject. The offer of testimony was made at side bar and the court very carefully excluded any reference to a proposed compromise and admitted only the bare statement of the witness as to the fact of his knowledge that the whole amount was due. While an offer of compromise is not admissible as evidence of liability the distinct admission of a fact by one of the parties is not to be excluded because it was made in connection with a proposition looking to a compromise : Arthur v. James, 28 Pa. 236. There is less reason for excluding the proof of a statement by a witness in conflict with his testimony at the trial because in the same conversation a compromise was suggested.

The right to discredit a witness by proof of contradictory statements, without having first called his attention to them, is under our later decisions a matter that rests in the sound discretion of the court: Cronkrite v. Trexler, 187 Pa. 100. A

failure to lay a foundation for the impeachment of the witness became immaterial, since he was recalled and given an opportunity to explain or reconcile the statement with his testimony.

. The judgment is affirmed.