471 A.2d 100

**Shirley H. WEINGRAD, Administratrix of the Estate of Richard H. Weingrad, Deceased, Appellant**

v.

**PHILADELPHIA ELECTRIC COMPANY, Donald Lippy, and Montgomeryville Airport, Inc.**

Superior Court of Pennsylvania.

Argued Sept. 7, 1983.

Filed Jan. 20, 1984.

Petition for Allowance of Appeal Denied May 31, 1984.

Keith S. Erbstein, Philadelphia, for appellant.

Patrick W. Kittredge, Philadelphia, for Phila. Electric, appellee.

Ronald C. Scott, Philadelphia, for Lippy, appellee.

Martin W. Bashoff, Philadelphia, for Montgomeryville, appellee.

Before ROWLEY, POPOVICH and MONTGOMERY, JJ.

POPOVICH, Judge:

On the afternoon of October 19, 1974, Richard Weingrad, a flight instructor, was administering a bi-annual flight review of the owner and pilot of an aircraft. As part of this review, the instructor requested that the pilot, Donald Lippy, demonstrate his ability to land the plane at an airport during a simulated low altitude engine failure. During the course of this exercise, the aircraft hit a pole owned by the Philadelphia Electric Company (hereinafter referred to as PECO), which resulted in the death of Mr. Weingrad. Thereafter, Shirley H. Weingrad, administratrix of the estate of the deceased, instituted an action in trespass against both Mr. Lippy and PECO[1]. On January 23, 1981, the jury rendered a verdict against the plaintiff and in favor of all defendants. The trial court denied plaintiff's motion for a

---

1. PECO subsequently joined as additional defendants Montgomeryville Airport, Inc., which managed and operated the airport; Amterre Management, Inc., which owned the land on which the airport was located at the commencement of the action; and, A.Q. Associates, a limited partnership which owned the property on which the airport was located until December, 1974. On January 22, 1980, the trial court granted motions for summary judgment filed by the latter two additional defendants.

new trial, and ordered that judgment be entered on the verdict. This appeal followed. We affirm.

Appellant raises several questions for our review. However, only one of these issues merits discussion, i.e., whether the court below committed reversible error by informing the jury that Donald Lippy had settled with appellant prior to trial. The remaining issues were adequately disposed of by the lower court in its opinions of October 28, 1981, and January 22, 1980, and need no further comment.

Before any testimony was given, and after hearing the arguments of counsel on the settlement issue, the trial court made the following statement to the jury:

"THE COURT: Ladies and gentlemen of the jury, before we commence the testimony there is an aspect of this case by which I believe I should advise you. The plaintiff's claim against the defendant, Lippy, has been settled. I shall not mention the amount of the settlement, although plaintiff is free to mention it if she wishes. That means that the amount Lippy is obliged to pay has been fixed, regardless of what action the jury may take. This settlement, however, in no way reduces your responsibility, as you must still determine what defendant, or defendants, under the law is liable to the plaintiff. If you find one or more defendants liable to the plaintiff, you must still determine what sum of money would be fair and adequate compensation for the decedent's death. I am not asking you to draw any inference from the facts of the settlement, though various Counsel may wish to ask you to draw an inference. You may or may not consider the facts of this settlement significant in evaluating the position of the parties and the testimony of the witness. This will be entirely up to you." (Notes of Testimony, Jan. 19, 1981, pp. 98, 99).

Aside from permitting appellant to mention the amount of the settlement, the court also allowed Mr. Lippy to be cross-examined by both PECO and appellant, as if he were truly an adversary of both parties. The events immediately preceding the crash were testified to by Mr. Lippy during

cross-examination by the attorney representing PECO. According to Mr. Lippy, appellant's decedent, as instructor, was in control of the throttle of the aircraft during the simulated engine failure. Mr. Lippy was to guide the plane to an emergency landing. It became immediately obvious to Mr. Lippy that they were too far out to make a safe landing at the airport unless Mr. Weingrad gave more power to the engine. Mr. Lippy told his instructor three times that they were too low and were not going to make it, but Mr. Weingrad insisted only that Mr. Lippy make as steep a turn as possible and did not give any more power to the engine. Mr. Lippy stated that with more power they would have had no problem in clearing the obstructions.

■ As we previously stated, appellant contends that the court erred in disclosing to the jury that Mr. Lippy had settled. We agree. The court below considered our decision in *Cartmel v. Williams*, 207 Pa.Super. 144, 215 A.2d 282 (1965), where we held that the trial court did not err in refusing to admit a joint-tortfeasor release into evidence. The trial court interpreted our holding in *Cartmel, supra*, as leaving resolution of this evidentiary question to the trial judge's discretion. Regardless of the correctness of the trial court's interpretation of *Cartmel*, that case is irrelevant to the case at bar because it predates the following statute, which provides in relevant part:

"§ 6141. **Effect of certain settlements**

(a) Personal injuries.—Settlement with or any payment made to an injured person or to others on behalf of such injured person with the permission of such injured person or to anyone entitled to recover damages on account of injury or death of such person shall not constitute an admission of liability by the person making the payment or on whose behalf the payment was made, unless the parties to such settlement or payment agree to the contrary.

(b) Damages to property.—Settlement with or any payment made to a person or on his behalf to others for damages to or destruction of property shall not constitute

an admission of liability by the person making the payment or on whose behalf the payment was made, unless the parties to such settlement or payment agree to the contrary.

(c) *Admissibility in evidence.*—Except in an action in which final settlement and release has been pleaded as a complete defense, *any settlement or payment referred to in subsections (a) and (b) shall not be admissible in evidence on the trial of any matter."*

42 Pa.C.S.A. § 6141 [2].

Because the settlement in the instant case has not been pleaded as a complete defense, it "shall not be admissible in evidence on the trial of any matter." Clearly, the trial court erred in informing the jury of the settlement.[3]

**2.** 42 Pa.C.S.A. § 6141 is a substantial reenactment of the Act of July 31, 1968, P.L. 936, No. 284, §§ 1 to 4 (12 P.S. §§ 2089.11 to 2089.14).

**3.** In its opinion denying post-trial motions, the trial court stated:
"There is one case, however, which we believe is on all fours with the present case, namely *Hareng v. Blanke,* 90 Wis.2d 158, 279 N.W.2d 437 (1979). In considering a similar situation, that Court stated (279 N.W.2d at 442):
'... we conclude that the testimony was admissible. While public policy provides a limited privilege against disclosure of settlements and offers to settle, the privilege and the exclusion is not absolute. Sec. 904.08, Stats., "does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness ..." See also McCormick, Evidence (2d ed.), Sec. 274, p. 664.
It is argued by defendants that the evidence of a prior settlement between Dr. Bowden and the Harengs was admissible to show prejudice on the part of Anne Hareng as a witness because she had a financial interest in playing down the negligence of Dr. Bowden and emphasizing that of Dr. Blanke and Dr. Kourakis. We agree, and we conclude that evidence of a settlement can be used, as in this case to show possible bias of a witness, although it cannot be used to prove liability or invalidity of a claim at issue.'
We are in firm agreement with the Court in *Hareng.* Where a pretrial settlement causes a realignment of parties so that a settling defendant becomes an actual or potential ally of the plaintiff, we believe the fact of settlement should be disclosed to the jury. In the present case, for example, defendant Lippy testified that prior to trial, he had had a several-hour conference with his attorney *and the plaintiff's attorney* together. The posture of the plaintiff from the moment trial began was that she had concluded that Mr. Lippy was not at fault and that only PECO was at fault. It was suggested

■ Nevertheless, this error does not necessarily require that a new trial be held. "To constitute reversible error, a ruling on evidence or an instruction to a jury must be shown not only to have been erroneous but harmful to the party complaining." *Anderson v. Hughes,* 417 Pa. 87, 92, 208 A.2d 789, 791 (1965). "It is axiomatic that 'the ... admission of evidence[, even if erroneous,] is not considered a ground for a new trial where no harm or prejudice has resulted.' " *Kolb v. Hess,* 227 Pa.Super. 603, 611, 323 A.2d 217, 221–222 (1974). Appellant argues that introduction of the settlement created the risk of confusing the jury and causing speculation as to whether the liable party was still in the case, or whether the plaintiff had received all of the damages to which she was entitled. Appellant asserts that we can never know to what extent the jury considered the settlement.

Were it not for the special findings of the jury in this case, we would be persuaded by appellant's argument.

that this was a magnanimous conclusion based on the search for truth. We do not conclude that it was not; we do, however, believe the jury should have been able to evaluate this position and Mr. Lippy's testimony with the knowledge that the adversary status of the plaintiff and defendant Lippy had terminated." (Lower court opinion at pp. 8, 9).

Section 904.08 of the Wisconsin statutes provides:

"Compromise and offers to compromise Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This section does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, proving accord and satisfaction, novation or release, or proving an effort to compromise or obstruct a criminal investigation or prosecution."

The comparatively inflexible Pennsylvania statute, 42 Pa.C.S.A. § 6141, would obviously inhibit a jury's factfinding capability in cases where a co-defendant, who happens to be the sole eyewitness to an accident, has settled with the plaintiff prior to trial. It is the opinion of this Court that the public policy of promoting settlements would not be frustrated by a law similar to that in Wisconsin, which permits the admission of evidence of settlements when offered to prove bias or prejudice of a witness.

However, in response to special interrogatories, the jury found that Donald Lippy was not negligent, that PECO was not negligent, that the airport was not negligent, but that the deceased was negligent in that he failed to exercise reasonable care for his own safety and that such negligence was a substantial factor in causing his own death. "The special findings of the jury which served to resolve the factual dispute between the parties must be taken as a final adjudication of these factual questions, unless, for some proper reason, the court set [sic] them aside." *Berliner v. Bee Em Manufacturing Co.*, 383 Pa. 458, 119 A.2d 65 (1956). Although we would envision that in most cases the improper admission of a joint-tortfeasor release would constitute reversible error, we fail to see how appellant could have been harmed in this case. In *Jaski v. West Park Daily Cleaners and Dyers*, 334 Pa. 12, 5 A.2d 105 (1939) the plaintiff's own testimony showed a want of care upon her part, thus allowing the Supreme Court to ignore her contentions of trial court error. *Id.*, 334 Pa. at 15, 5 A.2d at 106. In the instant case, it is obvious that the factfinder believed Mr. Lippy's testimony that he had warned appellant's decedent that they were flying too low. Thus, the jury found that the deceased was contributorily negligent. Although Mr. Lippy was not the plaintiff, he was the only living eye-witness to the events inside the cockpit immediately preceding the crash. More importantly, because he had already settled, Mr. Lippy was not appellant's true adversary during the trial. Since the jury specifically found Mr. Lippy not to have been negligent, there is no basis in fact for appellant's fear that the jury might improperly have assumed that the party who had settled was the only liable party. For this reason, and because the jury found appellant's decedent to have been contributorily negligent, appellant's concern that the jury may have unfairly considered that appellant had received all of the damages to which she was entitled is also unfounded. Therefore, because of the unusual factual circumstances surrounding this case, we find that appellant was not prejudiced by the

trial court's error. Accordingly, we must affirm the judgment of the court below.

Judgment affirmed.

MONTGOMERY, J., files a dissenting statement.

MONTGOMERY, Judge, dissenting:

I must respectfully dissent. I believe that the lower court committed reversible error when it informed the jury that the Defendant, Donald Lippy, had reached a settlement with the Plaintiff. I find significant merit in the Appellant's contention that the jury may have unfairly considered that the Appellant had received all of the damages to which she was entitled in arriving at her settlement with Mr. Lippy.

The Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 6141, recited in the Majority Opinion, is clear in declaring that no evidence of any settlement or payment should be admitted into evidence in a trial such as the one which took place in the instant case. I believe that the legislative rationale for that statute was that a jury, upon learning of a settlement, could decide to reduce or eliminate any award to an otherwise eligible plaintiff based upon the conclusion that the plaintiff had already received a recovery to the extent that he or she was entitled to or satisfied with in the settlement which had been reached. The jurors could conclude that to award further damages would create a windfall. Moreover, since the jury specifically found Mr. Lippy not to have been negligent in this case, it is reasonable to speculate that the jury members could have reached the conclusion that the Plaintiff had received some monies from that defendant to which she was not entitled, so that the jury would therefore think it fair to deny her any recovery from any other party, against whom an award might otherwise have been made. There is simply no way to determine whether or not such prejudicial considerations resulted from the disclosure of settlement to the jury in the instant case.

24

I believe that the manifest violation of the statute created the clear potential of serious and prejudicial error in the instant case and I therefore feel that the Appellant is entitled to a new trial at which any evidence of settlement would be excluded.