610 A.2d 979

**Lucille HAMMEL and Joseph Hammel,
her husband, Appellants,**

v.

**Dara Lyn CHRISTIAN, Appellee,**

v.

**Mary Theresa HAMMEL, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 14, 1992.

Filed May 29, 1992.

Reargument Denied July 29, 1992.

80

Samuel Cordes, Pittsburgh, for appellants.

John E. Kunz, Pittsburgh, for Christian, appellee.

Before CAVANAUGH, WIEAND and HESTER, JJ.

WIEAND, Judge:

On April 25, 1985, at or about 6:45 p.m., vehicles driven by Dara Lyn Christian and Mary Theresa Hammel, now DeClaudio, came into collision at the intersection of Brownsville Road and Sixth Avenue in the Township of South Park, Allegheny County. The intersection was controlled by a traffic light. Injured as a result of the collision was Lucille E. Hammel, a passenger in the vehicle operated by her daughter, Mary Theresa. Lucille Hammel and her husband, Joseph, commenced a civil action against Dara Lyn Christian, who caused Mary Theresa DeClaudio to be joined as an additional defendant. At trial, the jury found that only Mary Theresa DeClaudio, the additional defendant, had been negligent in causing the accident and awarded damages of fifty-five thousand ($55,000.00) dollars to the wife-plaintiff.[1] Post-trial motions were denied, judgment was entered on the verdict, and the plaintiffs appealed.

The trial court did not err when it denied appellants' motion for judgment n.o.v. "A judgment n.o.v. may be entered only in a clear case where the facts are such that no two reasonable persons can fail to agree that the verdict is improper." *Lira v. Albert Einstein Medical Center*, 384 Pa.Super. 503, 508, 559 A.2d 550, 552 (1989), *allocatur denied*, 527 Pa. 635, 592 A.2d 1302 (1990). See: *Fleck v. Durawood, Inc.*, 365 Pa.Super. 123, 127, 529 A.2d 3, 5 (1987). In ruling upon a plaintiff's motion for judgment n.o.v., moreover, a trial court is required to consider the

1. ·The jury awarded no damages to the husband-plaintiff.

evidence, as well as all reasonable inferences therefrom, in the light most favorable to the defendant who won the verdict. *Atkins v. Urban Redevelopment Authority of Pittsburgh,* 489 Pa. 344, 351, 414 A.2d 100, 103 (1980); *Lira v. Albert Einstein Medical Center, supra* at 508, 559 A.2d at 552.

 In the instant case, there was evidence that the additional defendant, while driving on a four lane road, had attempted to make a left turn across two lanes of approaching traffic at a time when her vision was partially obstructed by other vehicles and without first ascertaining that the curb lane was free of traffic moving into the intersection with a green light. Under these circumstances, a jury could reasonably find that it had been the additional defendant who was one hundred (100%) percent at fault in causing a collision with a vehicle which had been operated by the defendant in the curb lane.

Jeanine Reese Schultz, a witness, was residing outside Pennsylvania and was unwilling to testify on plaintiffs' behalf. At the scene of the accident, according to the testimony of the wife-plaintiff and her daughter, the witness had told them that Ms. Christian was speeding. Testimony of this statement was received in evidence. However, the trial court disallowed testimony regarding a similar statement made by the witness to an investigating police officer fifteen (15) to eighteen (18) minutes after the accident. The trial court also excluded evidence of a statement made by the witness to a private investigator almost five months after the accident. Appellants contend that the exclusion of these statements was error.

 Hearsay is an out of court statement offered to prove the truth of the matter asserted. *Hreha v. Benscoter,* 381 Pa.Super. 556, 565, 554 A.2d 525, 529 (1989); *Spotts v. Reidell,* 345 Pa.Super. 37, 42, 497 A.2d 630, 633 (1985). Hearsay evidence is inadmissible, primarily because out of court statements "are not generally made under conditions in which they may be subjected to testing by cross-examina-

tion." Packel and Poulin, Pennsylvania Evidence § 802. See: *Carney v. Pennsylvania R.R. Co.*, 428 Pa. 489, 240 A.2d 71 (1968); *Commonwealth v. Joraskie*, 360 Pa.Super. 97, 100, 519 A.2d 1010, 1011 (1987). The res gestae or excited utterance exception to the hearsay exclusion was defined by the Supreme Court of Pennsylvania in *Allen v. Mack*, 345 Pa. 407, 28 A.2d 783 (1942), as

> a spontaneous declaration by a person whose mind has been suddenly made subject to an over-powering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties. In a res gestae declaration the exciting event speaks through the impulsive words of a participant or onlooker. It is in a psychological sense a part of the act itself. The apparent condition of the declarant's mind when the declaration is made is the test of the latter's admissibility as a part of the res gestae. To make the declaration admissible the state of the declarant's mind as induced by the shock of the occurrence must be such as to integrate his spontaneous declaration exclusively with the occurrence itself.

*Id.*, 345 Pa. at 410, 28 A.2d at 784–785. In *Commonwealth v. Sanford*, 397 Pa.Super. 581, 580 A.2d 784 (1990), *allocatur denied*, 527 Pa. 586, 588 A.2d 508 (1991), the Superior Court explained further as follows:

> In considering the facts of particular cases where this issue has been raised, the courts have considered: 1) whether the declarant, in fact, witnessed the startling event; 2) the time that elapsed between the startling event and the declaration; 3) whether the statement was in narrative form (inadmissible); and, 4) whether the declarant spoke to others before making the statement, or had the opportunity to do so.

*Id.,* 397 Pa.Superior Ct. at 589, 580 A.2d at 788. Time, therefore, is an important factor.

> If the statement occurs while the exciting event is still in progress, courts have little difficulty finding that the excitement prompted the statement. But as the time between the event and the statement increases, so does the reluctance to find the statement an excited utterance.... Perhaps an accurate rule of thumb might be that where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process.

Packel and Poulin, Pennsylvania Evidence, § 803.2, at p. 569, quoting McCormick, Evidence, § 297 at p. 856 (3d ed. 1984).

■ In the instant case, the trial court held that a statement made by the witness to an investigating police officer fifteen (15) to eighteen (18) minutes after the accident and after the witness had earlier spoken to two of the parties involved in the accident was not shown to have been induced by the shock of seeing the accident. We find no error in this evidentiary ruling. In *Haas v. Kasnot,* 371 Pa. 580, 92 A.2d 171 (1952), a statement made to a police officer two or three minutes after the accident was excluded because it was not shown to be an "emotional, impulsive outburst made under the spell of excitement or shock caused by the occurrence to which [the statement] relate[d] and uttered before the process of the intellect [had] had opportunity to come into play." *Id.,* 371 Pa. at 583–584, 92 A.2d at 173.

■ The statement made by the witness to a private investigator almost five months after the accident was also subject to exclusion as hearsay; it was not admissible as past recollection recorded. Before the content of a writing becomes admissible under the hearsay exception for past recollection recorded, the proponent must show that the following four requirements have been met:

"1) the witness must have had firsthand knowledge of the event; 2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it; 3) the witness must lack a present recollection of the event, and 4) the witness must vouch for the accuracy of the written memorandum."

*Commonwealth v. Cooley*, 484 Pa. 14, 21, 398 A.2d 637, 641 (1979), quoting McCormick, Evidence, § 299 at p. 712 (2d Ed.1972). In the instant case, the statement was not made at or near the time of the accident, and the witness refused to vouch for the accuracy of the written statement allegedly made to plaintiffs' private investigator. When her depositions were taken in Ohio, she professed to lack any recollection of the accident and either could not or would not vouch for the accuracy of the statement produced by the plaintiffs. Indeed, she said she didn't remember giving the statement. Under these circumstances, the trial court did not err when it held that the written statement allegedly made to the private investigator was hearsay and inadmissible.

■ Prior to trial, the plaintiffs settled their claim against their daughter, the additional defendant, and executed a joint tortfeasor's release. As a part of that release, plaintiffs agreed that at trial they would not present any evidence against their daughter, Mary Theresa Hammel DeClaudio. At trial, the wife-plaintiff was cross-examined about this agreement. Appellants contend that this was error. We disagree.

The agreement not to present evidence against her daughter was relevant to attack the credibility of the wife-plaintiff's version of the accident. A review of the record discloses that the jury was never told that the plaintiffs' claim against the additional defendant had been settled. Moreover, although the language of the release was shown to the wife-plaintiff, the release was not given to the jury to examine, and it was identified in the testimony merely as "this document which you and your husband signed." The

true nature of the document was not at any time divulged to the jury. The trial court, under these circumstances, did not commit error or abuse its discretion by allowing the witness to be cross-examined about her agreement not to give testimony against the additional defendant.

Appellants argue that such cross-examination was in violation of statutory law, adopted at 42 Pa.C.S. § 6141(c), which provides that a settlement or payment of a claim is not admissible in evidence. As previously discussed, the settlement agreement was not admitted as evidence, and its existence was never revealed to the jury. Hence the prohibition in § 6141(c) was never violated. The statute does not render inadmissible those statements which are made during settlement negotiations when the statements are otherwise admissible as admissions or declarations against interest or when they are relevant to aid a jury in assessing the credibility of testimony given by a party. See: *Rochester Machine Corp. v. Mulach Steel Corp.*, 498 Pa. 545, 551, 449 A.2d 1366, 1369 (1982); *Mannella v. City of Pittsburgh*, 334 Pa. 396, 403, 6 A.2d 70, 73 (1939); *Rabinowitz v. Silverman*, 223 Pa. 139, 144, 72 A. 378, 380 (1909). In such cases, a trial court is only required to exclude reference to the compromise, while allowing the jury to hear the statements. Packel and Poulin, Pennsylvania Evidence, § 408 at p. 200 (1987). See: *Rabinowitz v. Silverman, supra.*

Finally, appellants argue that the trial court erred when it disallowed cross-examination of the defendant regarding ownership of the vehicle which she had been driving at the time of the accident. In fact, the vehicle was owned by Kimberly Clark Corporation,[2] the employer of defendant's father, to whom use of the vehicle had been entrusted. The trial court ruled that this evidence was irrelevant. Appellants appear to concede the substantive irrelevancy of the legal ownership of the car but contend that it should have

2. Kimberly Clark had been named as a defendant in plaintiffs complaint, but a motion for summary judgment in its favor had been granted pre-trial by agreement of the parties.

been allowed to contradict the defendant who, when asked whose car she was driving, replied, "my father's."

 "[T]he scope and limits of cross-examination are within the trial court's discretion, and the court's rulings thereon will not be reversed in the absence of a clear abuse of discretion or an error of law." *Kearns by Kearns v. DeHaas*, 377 Pa.Super. 200, 205, 546 A.2d 1226, 1228–1229 (1988), *allocatur denied*, 522 Pa. 584, 559 A.2d 527 (1989), quoting *Kemp v. Qualls*, 326 Pa.Super. 319, 324, 473 A.2d 1369, 1371 (1984). A trial court will not be reversed where it exercises its discretion to limit cross-examination regarding collateral matters. *Chiorazzi v. Commonwealth, Dept. of Highways*, 411 Pa. 397, 400, 192 A.2d 400, 401 (1963); *Kearns by Kearns v. DeHaas, supra*, 377 Pa.Superior Ct. at 205, 546 A.2d at 1229. In the instant case, the trial court did not err when it refused to permit the defendant to be cross-examined about the ownership of the vehicle which she was driving at the time of the accident and the agreement between her father and Kimberly Clark Corporation regarding the use of such vehicle. In *Papa v. Pittsburgh Penn–Center Corporation*, 421 Pa. 228, 218 A.2d 783 (1966), the Supreme Court adopted the opinion of the trial court which had held, in part, as follows:

The law is clear in Pennsylvania that a witness may not be contradicted on matters not germane to the issue involved: *Commonwealth v. Burdell*, 380 Pa. 43, 51, 110 A.2d 193; *Zubrod v. Kuhn*, 357 Pa. 200, 203, 53 A.2d 604; *Commonwealth v. Petrillo*, 341 Pa. 209, 19 A.2d 288. In *Commonwealth v. Petrillo*, 341 Pa. at 223, 19 A.2d at 295, the Court stated:

"There seems to be considerable misunderstanding on the rules of evidence relating to the **contradiction of witnesses**. No witness can be contradicted on **everything he testifies to** in order to 'test his credibility'. The pivotal issues in a trial cannot be 'side-tracked' for the determination of whether or not a witness lied in making a statement about something **which has no relationship to the case on trial**. The purpose of trials

is not to determine the ratings of witnesses for general veracity. A witness can be contradicted only on matters germane to the issue trying. There is no rule more firmly established than this: 'No contradiction shall be permitted on collateral matters.' " (Emphasis in the original).

In the same case, 341 Pa. at 224, 19 A.2d at 295 the Court quoted from Wigmore on Evidence, 3rd ed., Vol. 3, Section 1003 as follows:

"The only true test [of 'collateralness'] is * * * 'Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?' "

421 Pa. at 229, 218 A.2d at 789.[3] Judged by this standard, it seems clear that the ownership of the vehicle being driven by the defendant and the agreement between her father and Kimberly Clark were collateral matters. To have allowed cross-examination regarding such matters would have served to divert the jury's attention from the relevant issues of fault in this accident, while serving no proper purpose.

The case was well tried before an able and experienced trial judge who committed neither trial error nor abuse of discretion. The judgment entered on the jury's verdict, therefore, must be, as it is,

Affirmed.

CAVANAUGH, J., files a concurring opinion.

CAVANAUGH, Judge, concurring:

I join in the majority's disposition of all issues with the exception of whether it was proper for the lower court to permit the original defendant's counsel to cross-examine plaintiff Lucille Hammel with a discrete portion of a joint tortfeasor release. I agree with the majority that the trial court did not err in allowing such cross-examination. However, I believe that the majority's rationale is erroneous insofar as it relies for support on cases which interpret the

3. The opinion of the trial court appears at 38 Pa.D. & C.2d 756.

common law rule for offer of compromise instead of cases which interpret 42 Pa.C.S.A. § 6141, the law which governs completed compromise agreements. *See* Part I, *infra.* In Part II, *infra,* I present my own rationale for permitting the cross-examination of plaintiff Lucille Hammell. The lower court was presented during trial with a provision in a joint tortfeasor release which appeared to require that the plaintiffs not to give testimony against the additional defendant. This provision could easily be seen as a direct attempt to frustrate the administration of justice. I would hold that the lower court committed no abuse of discretion, after not being convinced that the provision was innocuous after a lengthy side bar, in allowing limited cross examination.

## I.

The majority's analysis fails to acknowledge that our Commonwealth appears to treat differently admissions revealed *during the course of negotiating* a settlement agreement and information contained *in* a settlement agreement. I submit we are faced with the latter, not the former, as plaintiff Lucille Hammel was cross-examined based on a provision *in* a settlement agreement. I also submit that the rule which states admissions made during the course of settlement negotiations are admissible at trial, if it continues to have vitality,[1] is not applicable to admissions appearing in a settlement agreement. The former is a rule derived from the common law, as opposed to the latter,

---

1. The majority cites three cases for the above mentioned rule: *Rochester Machine Corp. v. Mulach Steel Corp.,* 498 Pa. 545, 551, 449 A.2d 1366, 1369 (1982); *Manella v. City of Pittsburgh,* 334 Pa. 396, 403, 6 A.2d 70, 73 (1939); *Rabinowitz v. Silverman,* 223 Pa. 139, 144, 72 A. 378, 380 (1909). In *Rochester,* only two justices affirmed on the basis of the above mentioned rule, three others preferring to affirm on narrower grounds while one justice concurred in the result and one dissented. Although I would adhere to this time-honored (though much questioned) rule until specific indication from our Supreme Court articulating a different rule, the votes in *Rochester* may indicate discomfort with the rule.

which is governed by an explicit statutory provision, 42 Pa.C.S.A. § 6141.

The admissibility into evidence of a settlement agreement is governed by 42 Pa.C.S.A. § 6141. It reads in pertinent part as follows:

§ 6141. Effect of certain settlements.

(a) Personal injuries.—Settlement with or any payment made to an injured person or to others on behalf of such injured person with the permission of such injured person or to anyone entitled to recover damages on account of injury or death of such person shall not constitute an admission of liability by the person making the payment or on whose behalf this payment was made, unless the parties to such settlement or payment agree to the contrary.

(b) Damages to property.—Settlement with or any payment made to a person or on his behalf to others for damages to or destruction of property shall not constitute an admission of liability by the person making the payment or on whose behalf the payment was made, unless the parties to such settlement or payment agree to the contrary.

(c) Admissibility in evidence.—Except in an action in which final settlement and release has been pleaded as a complete defense, any settlement or payment referred to in subsections (a) and (b) shall not be admissible in evidence on the trial of any matter.

This Court is no stranger to articulating the breadth of the above section. On numerous prior occasions we have opined on a request by counsel to utilize settlement agreements to show bias, prejudice or interest. On all of these occasions we have pronounced that the section is a formidable bar to counsel who wish to so utilize a settlement agreement. On at least two occasions we have characterized the protection of this section as relatively 'inflexible.' *Wilkerson v. Allied Van Lines, Inc.*, 360 Pa.Super. 523, 534, 521 A.2d 25, 31 (1987) *appeal dismissed*, 518 Pa. 61, 540 A.2d 268 (1988); *Weingrad v. Philadelphia Elec. Co.*, 324 Pa.Super. 16, 20 n. 3, 471 A.2d 100, 103 n. 3 (1984). On

another occasion we have declared that "[i]t is axiomatic that the settlement agreement among the settling tortfeasors could not be admitted or used for any purpose during the trial of this matter." *Cipriani v. Sun Pipe Line Co.,* 393 Pa.Super. 471, 481, 574 A.2d 706, 711–2 (1990). Most recently, we have addressed whether a version of the so-called "Mary Carter Agreement," a secret settlement agreement which realigns the interests of a co-defendant with a plaintiff in a heavy-handed fashion, was admissible. *Hatfield v. Continental Imports, Inc.,* 396 Pa.Super. 309, 578 A.2d 530, 532 (1990), *alloc. granted* 527 Pa. 601, 589 A.2d 691 (1991). We found that such was not the case, as elaborated below.

A "Mary Carter Agreement" derives its name from the Florida decision *Booth v. Mary Carter Paint Co.,* 202 So.2d 8 (Fla.App.1967). It is a secret agreement between a plaintiff and a co-defendant which gives the co-defendant incentive to support the plaintiff's case. The classic formulation is that the defendant agrees to remain in the action and will pay to the plaintiff a set amount regardless of the action's outcome, but the defendant's own liability will be diminished proportionally by increasing the liability of the other co-defendants. In *Hatfield,* we held that even if the pertinent agreement was a "Mary Carter Agreement," "the express mandate of § 6141(c) prohibits admission of such an agreement." *Id.,* 396 Pa.Superior Ct. at 312, 578 A.2d at 531.

Given our, if anything, rigid adherence to a broad interpretation of the statute's scope, the majority opinion is puzzling.[2] The tenor of the majority's argument is that an admission contained in a settlement agreement may be used for cross-examination to display bias or prejudice of a

---

**2.** I note that the Majority has not asserted there exists a parallel between the way settlement agreements are handled under the Federal Rules of Evidence and under 42 Pa.C.S.A. § 6141. Under the F.R.E. 408, although evidence relating to underlying liability is inadmissible, the rule does not exclude evidence offered for any other purpose, such as proving bias or prejudice. See F.R.E. 408; Louisell and Mueller, Federal Evidence, § 172 at 292. Most courts, however, consider using a settlement agreement for cross-examination purposes to be more prejudicial than probative and under F.R.E. 403 will not admit them. See Louisell and Mueller at 293.

witness. The Majority takes no notice of our pronouncements in *Hatfield, Cipriani, Wilkerson,* and *Weingrad.* The majority opinion instead looks to the analysis set forth in part II of *Rochester Machine Corp. v. Mulach Steel Corp.,* 498 Pa. 545, 551, 449 A.2d 1366, 1369 (1982) for authority. This is troublesome, as this section indicates it was reaffirming the validity of the *common law rule of an offer to compromise.*[3] *Rochester, supra,* at 551, 449 A.2d at 1369. Thus, the majority looks to the common law rule of an Offer to compromise to interpret a statutory provision which appears to be a different rule. The common law rule of an offer to compromise allows the admission of distinct admissions of fact made during the course of negotiation. *Rochester, supra,* 498 Pa. at 556, 449 A.2d at 1371. Section 6141, however, as our broad pronouncements in *Hatfield* et al. indicate, would keep admissions and declarations against interest appearing in a settlement agreement confidential.[4]

## II.

I would dispose of this issue differently. The conduct of trial is within the discretion of the trial judge. *Kearns v.*

---

**3.** No mention is made of 42 Pa.C.S.A. § 6141 in *Rochester.* This section became effective on 6/27/78. If an Offer to Compromise was governed by § 6141, surely the Supreme Court in *Rochester* would have indicated this.

I also note that the majority's reliance on *Rochester* may be seen as slightly troubling as only two Justices joined in Part II, and no case in our Commonwealth has subsequently reaffirmed the validity of this rule. However, as the dissenting and concurring Justices made no explicit attempt to question the vitality of the common law rule of an offer to compromise, it remains the law.

**4.** The policy rationale behind the common law rule for Offer to Compromise appears to differ from the policy embodied in § 6141. The policy behind the common law rule is centered around giving the trier of fact broad access to relevant, non-prejudicial information which would be pertinent to its decision. *Cf. Rochester, supra,* 498 Pa. at 553, 449 A.2d at 1369–70; *Arthur v. James,* 28 Pa. 236 (1857). *See also,* Packel and Poulin, Pennsylvania Evidence, § 408 at 200. However, the policy behind 42 Pa.C.S.A. § 6141 apparently is that the expeditious and extrajudicial settlement of disputes is to be encouraged by holding the completed settlement agreement confidential. *Cf. Hatfield, Cipriani, Wilkerson,* and *Weingrad supra. See also* Packel and Poulin, Pennsylvania Evidence, § 408.1 at 201–2.

*Clark,* 343 Pa.Super. 30, 40, 493 A.2d 1358, 1363 (1985); *see also, Air Products and Chemicals, Inc. v. Johnson,* 296 Pa.Super. 405, 433, 442 A.2d 1114, 1129 (1982). Moreover, the scope and limits of cross-examination are within the trial court's discretion, and will not be reversed absent an abuse of discretion or an error of law. *Kemp v. Qualls,* 326 Pa.Super. 319, 324, 473 A.2d 1369, 1371 (1984); *see also, Gatling v. Rothman,* 267 Pa.Super. 566, 571, 407 A.2d 387, 389 (1979). The facts *sub judice* differ in nature, not in degree, from those in our decisions in *Hatfield, Cipriani, Wilkerson,* and *Weingrad.* As the Majority notes, the joint tortfeasor release contains a provision which easily lends to the interpretation, that as part of the agreement, the plaintiffs agreed not to give testimony against the additional defendant. The provision reads: "[t]his Release expressly includes ... the express agreement of the Plaintiffs, LU-CILLE E. HAMMEL and JOSEPH HAMMEL, her husband, not to present any evidence against MARY THERESA HAMMEL." (emphasis in original). This provision conflicts with legislative enactments designed to ensure that a party receives justice by providing the trier of fact with an honest picture of events. Pursuant to 42 Pa.C.S.A. § 5941(a)[5], the original defendant had a right to compel the plaintiff to testify as to her recollection of the accident. This testimony was subject to the penalties for perjury. *See* 18 Pa.C.S.A. § 4902. Accordingly, I would treat it *void ab initia,* and thus not entitled to the protection afforded by 42 Pa.C.S.A. § 6141. The legislature has indicated that, in interpreting the intention of the General Assembly in the enactment of a statute, there exists the presumption that the Assembly did not intend a result that is absurd or

---

**5.** 42 Pa.C.S.A. § 5941(a) reads as follows:

**§ 5941. Persons who may be compelled to testify**

**(a) General rule.**—Except defendants actually upon trial in a criminal proceeding, any competent witness may be compelled to testify in any matter, civil or criminal; but he may not be compelled to answer any question which, in the opinion of the trial judge, would tend to incriminate him; nor may the neglect or refusal of any defendant, actually upon trial in a criminal proceeding, to offer himself as a witness, be treated as creating any presumption against him, or be adversely referred to by court or counsel during the trial.

unreasonable, or that it intended to favor a private interest over a public interest. 1 Pa.C.S.A. § 1922(1) & (5). The Assembly in enacting § 6141 obviously wished to give incentive for the extrajudicial resolution of disputes, as opposed to protection, under the guise of settlement, for attempts to violate the integrity of our legal system.

A settlement agreement is a contract. Although courts will enforce a wide range and variety of contracts, there are certain things considered unenforceable. *Inter alia,* we will not enforce contracts for sex, contracts to commit crime, contracts to commit usury, and contracts to subvert justice. A contract to suppress evidence has traditionally been considered unenforceable:

> It is quite as objectionable for the suppression of evidence, by paying witnesses to leave the state or otherwise, as to bargain for its production, and any bargain having this for its object is invalid.

14 S. Williston, *A Treatise on the Law of Contracts,* § 1716 (3rd Ed.1972) (footnote omitted).

At trial, the lower court conducted a very lengthy side bar concerning the ability of the original defendant to use the offending provision to cross-examine the witness. After not being satisfied by plaintiffs' and additional defendant's arguments that the provision was innocuous, it determined that the provision could be utilized to cross-examination. The lower court allowed the following two questions to be asked: (1) Was plaintiff Lucille Hammel's signature on the document? and (2) Whether, in the document, it says that she and her husband expressly agree not to present any evidence against Mary Theresa Hammel? The lower court allowed these questions under the express condition that the document was not to be referred to as a release. It is pertinent to note that both plaintiffs' counsel and additional defendant's counsel denied any knowledge that this provision was contained in the joint tortfeasor release. Neither gave the lower court a satisfactory explanation as to why the language appears in the agreement, and on appeal a satisfactory explanation is still lacking.

Faced with the failure of counsel to explain the presence of this language in the provision, I would hold that the lower court did not abuse its inherent discretion in allowing a discrete portion of the agreement to be used to impeach the witness. Although admittedly we have interpreted the language in 42 Pa.C.S.A. § 6141 broadly, it would be unreasonable to stretch its protection to a contractual provision that would be unenforceable due to illegality.