## Struble v. Valley Forge Military Academy

C.P. of Delaware County, no. 92-6178.

*A. Roy DeCaro,* for plaintiff.
*Charles W. Craven,* for defendant.

McGOVERN, *J.,* January 10, 1995—Defendant appeals from the judgment entered upon the jury's verdict in favor of plaintiff in the above-captioned matter. The appeal focuses solely upon the issue of whether the court should have instructed this jury concerning the doctrine of "assumption of the risk."

Plaintiff, Stanley Struble III, a student at the Valley Forge Military Academy, was preparing to fire a ceremonial cannon on the parade grounds April 7, 1991 when the cannon discharged, seriously injuring his right leg. Plaintiff, who was one of several students assigned the responsibility of caring for and firing this cannon at school ceremonies, had fired it on at least 200 previous occasions.

Plaintiff, in preparation for a parade on the date of this incident, had obtained the cannon, which was approximately two feet high and weighed 10 to 15 pounds, from the room of another student where it had been stored. He then went to another building and obtained the .10 gauge shotgun shells used for ammunition. Plaintiff went to the designated position on the parade grounds, loaded the cannon by placing the shotgun shell into the breech, and set the gun in position. He noted that the lanyard, used for firing the cannon, had become entangled in one of the wheels and he jiggled the lanyard in an effort to free it. Plaintiff was kneeling beside the cannon with his leg approximately six inches from its muzzle. While he was thus, attempting to free the lanyard, the gun discharged, wounding him in the right calf.

Plaintiff, at trial, contended that the defendant Academy was negligent by failing to instruct and supervise its students in the firing of this ceremonial cannon and in failing to warn their students of the danger presented thereby. Plaintiff testified that he had been instructed by another student concerning the use of the cannon and that there was no instruction from the faculty and no standard operating procedure, either written or oral, appertaining to the loading and firing of this ceremonial cannon. (5/19/93 N.T. 55.) Plaintiff also testified that the cannon was kept in a student's room because there was no other procedure for maintaining or storing it. (5/19/93 N.T. 51-52.)

Defendant contended at trial that a member of the faculty had been assigned to oversee the students detailed to care for and fire the cannon. Captain Timothy A. Tynan testified that he personally instructed students concerning the procedures to be followed in loading and firing the

cannon. (5/19/93 N.T. 128-134.) The theory of defense was founded principally upon the argument that plaintiff had assumed the risk of his injury.

The jury, following deliberation, awarded damages in the amount of $200,000 and apportioned 60 percent of the causal negligence to the defendant, and 40 percent thereof to plaintiff. Defendant's post-trial motions were based upon the theory of plaintiff's "assumption of the risk." Those post-trial motions were denied, and defendant has appealed from the judgment entered upon the jury's verdict.

## DENIAL OF MOTION FOR COMPULSORY NONSUIT AND FOR A DIRECTED VERDICT

Defendant contended in post-trial motions that plaintiff's evidence as a matter of law failed to establish a duty owed to plaintiff and any breach of such duty, if it existed. Defendant argued further that even so, there was no legal cause. Thus, defendant contends that it was entitled to a judgment notwithstanding the verdict.

A judgment notwithstanding the verdict is, of course, an extreme remedy granted in a clear case where the facts are such that no two reasonable persons can fail to agree that the verdict was improper. *Hammel v. Christian,* 416 Pa. Super. 78, 610 A.2d 979 (1992); *Robertson v. Atlantic Richfield Petroleum Products Company,* 371 Pa. Super. 49, 537 A.2d 814 (1987). The trial court, in ruling upon such a motion, must consider the evidence, together with all reasonable inferences therefrom, in a light most favorable to the verdict winner. *Lira v. Albert Einstein Medical Center,* 384 Pa. Super. 503, 559 A.2d

550 (1989); *alloc. denied*, 527 Pa. 635, 592 A.2d 1302 (1990).

A fair review of the evidence presented at trial will clearly indicate that an irreconcilable conflict existed between the parties hereto as to whether or not the plaintiff had been instructed by faculty members or other representatives of defendant concerning the use of this cannon. Plaintiff testified that he received no written or oral instruction and that no procedure existed for the maintenance and firing of the cannon. Captain Tynan, testifying for the defendant, said that he personally provided such instruction. Plaintiff testified that he was never advised concerning the dangers involved in the use of this cannon, and specifically that he did not know that standing beside the cannon (as opposed to in front of the muzzle) could cause injury when the weapon discharged. Captain Tynan, on the other hand, testified that he had personally instructed the students concerning the dangers inherent in the use of the cannon.

Defendant founded its motion for compulsory nonsuit and for a directed verdict on the theory that plaintiff had assumed the risk of injury from his actions, thereby relieving the defendant from any duty of care it owed the plaintiff. The defendant's argument, however, requires the court to accept defendant's evidence to the exclusion of plaintiff's testimony concerning the critical issue of whether or not there were instructions and cautions concerning the maintenance and use of this ceremonial cannon.

The non-moving party, where a motion for compulsory nonsuit is made at trial, must be afforded the benefit of every reasonable inference arising from the evidence.

*Canty v. Sun Transport Inc.,* 422 Pa. Super. 607, 620 A.2d 1 (1992). It is appropriate to grant a motion for compulsory nonsuit at trial only when the facts are so clear that reasonable people could not, from the evidence presented, find a basis supporting plaintiff's theory of recovery. Also, the trial court may properly grant a motion for directed verdict only where the record makes it clear that the moving party is entitled to that relief. *Human Relations Commission v. School District of Philadelphia,* 161 Pa. Commw. 658, 638 A.2d 304 (1994). If defendant is correct, then this court would have been required to resolve the issue of credibility, inappropriately removing it from the jury's venue of responsibility and accepting only defendant's testimony. It is not up to the court to decide the credibility and weight of the evidence, but rather, such must be left solely to the jury. *Lilley v. Johns-Manville Corporation,* 408 Pa. Super. 83, 596 A.2d 203 (1991); *alloc. denied,* 530 Pa. 644, 607 A.2d 254 (1992). Therefore, it would have been improper for the trial court here to grant either a motion for compulsory nonsuit or a motion for directed verdict because the legal theory involving "assumption of the risk" is, in the case at bar, inextricably intertwined with the issues of credibility. The motions were properly denied.

Since it cannot be fairly said that this case is one which is clear and where the facts are such that no two reasonable persons could fail to agree that the jury's verdict was improper, a judgment notwithstanding that verdict is not warranted. The rationale for this conclusion is the same as that hereinabove discussed with regard to defendant's motion for compulsory nonsuit. Indeed, the jury's verdict apportioning causal negligence on a 60 percent—40 percent basis is indicative that rea-

sonable persons, having carefully considered and weighed all of the conflicting evidence, did, in fact, disagree with defendant's position concerning warnings and cautions. Thus, for all of the foregoing reasons, the court properly denied defendant's motion for a judgment notwithstanding the verdict.

## ASSUMPTION OF THE RISK

Defendant contends that the trial court erred in declining to instruct the jury concerning the theory involving plaintiff's voluntary "assumption of the risk" in his handling of the cannon.

An extended discussion of this issue occurred between the court and counsel during the trial. (5/20/93 N.T. 3-8.) The trial court concluded, pursuant to the instructions set forth by the Pennsylvania Supreme Court in *Howell v. Clyde,* 533 Pa. 151, 620 A.2d 1107 (1993), that once the court ruled adversely upon defendant's motion for a compulsory nonsuit, the court was then required to send the case to the jury for consideration of the issue concerning comparative negligence and without an instruction concerning assumption of the risk. The trial court thus refused defendant's request for such an instruction and defendant contends that such was error, entitling defendant to a new trial limited to that issue.

The Pennsylvania Supreme Court in *Howell v. Clyde, supra,* revisited the issue concerning viability of the doctrine of "assumption of the risk" as a defense in a negligence action.[1] The Pennsylvania Supreme Court

---

1. The court considered the four types of "assumption of the risk" set forth in the Restatement (Second) of Torts, §496, and cases relevant to the history and present viability of this concept in Pennsylvania.

also considered the interaction of that doctrine with the theory of comparative negligence. The facts of *Howell v. Clyde, supra,* are similar to those in the instant case. There the plaintiff was injured when a fireworks cannon, owned by the host of a home where the plaintiff was attending a party, exploded. There, however, the cannon itself exploded. There the black powder was the "inherently dangerous" instrumentality and was provided by plaintiff who obtained it from his home. Here, the cannon did not explode; the shell discharged a wadding, not pellets or solid projectiles, and the cannon and ammunition were provided by defendant. Thus, this plaintiff's familiarity with the "dangerous instrumentality" and the instrumentality itself were different from such in *Howell v. Clyde, supra.* There, the plaintiff "... held a flashlight while ... [the defendant] ... filled the bore of the cannon half full of black powder." *(Howell v. Clyde, supra* at 153, 620 A.2d at 1108.) The plaintiff there stood back some 40 feet while the cannon was fired. The circumstances in that case give rise to the reasonable inference that the plaintiff understood the risk. Such circumstances are not present in the case at bar.

The trial court, in *Howell v. Clyde, supra,* entered a compulsory nonsuit, concluding that plaintiff had assumed the risk of injury and, therefore, was barred from recovery. The Pennsylvania Superior Court reversed and remanded the matter for a new trial, holding that it was error to grant the nonsuit on the basis of "assumption of the risk." The Pennsylvania Supreme Court granted allocatur.

The decision of the Pennsylvania Superior Court was reversed and the judgment of the trial court reinstated. There was no clear majority of the Supreme Court. Justice

Flaherty authored the opinion, with one justice concurring, and two justices concurring only in the result.

Justice Flaherty, in *Howell v. Clyde, supra,* wrote:

"... to the extent that an assumption of risk analysis is appropriate in any given case, it shall be applied by the court as a part of the duty analysis, and not as part of the case to be determined by the jury....

"... the court may determine that no duty exists only if reasonable minds could not disagree that the plaintiff deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury....

"If, on the other hand, the court is not able to make this determination, and a nonsuit is denied, then the case would proceed and would be submitted to the jury on a comparative negligence theory. Under this approach ... assumption of the risk would no longer be part of the jury's deliberations or instructions." *Id.* at 162-163, 620 A.2d at 1113.

It would seem, therefore, that at least two justices agree that when the trial court denies a nonsuit where the issue of "assumption of the risk" has been raised, the matter then is to be submitted to the jury with instructions concerning comparative negligence and without an instruction concerning "assumption of the risk."

Chief Justice Nix, in *Howell v. Clyde, supra,* filed a dissenting opinion wherein he concluded that the doctrine concerning "assumption of the risk" is no longer a viable defense in negligence cases because it was supplanted when the Commonwealth of Pennsylvania adopted its Comparative Negligence Act. Therefore, it is safe to con-

clude that, according to Chief Justice Nix, no instruction concerning "assumption of the risk" should ever be made to the jury in a negligence case.

Justice Zappala, in *Howell v. Clyde, supra,* observed:

"Until such time as this court arrives at a clear-cut majority, we will continually muddy the waters in the sensitive areas of both comparative negligence and the assumption of risk, both of which are cornerstones of the negligence law in this Commonwealth." *Id.* at 166, 620 A.2d at 1115.

When one reads this dissent in the context of the Pennsylvania Superior Court's decision in this case, it is reasonable to conclude that Justice Zappala would affirm the Superior Court decision, which was founded upon a "duty analysis." The "duty analysis" suggests that the doctrine of "assumption of the risk" is relevant solely to the issue of whether or not the defendant owed a duty to persons in the plaintiff's position, and is inherently a question of law, to be determined by the court. Older and broader views concerning the doctrine of "assumption of the risk" suggest that this doctrine, in addition to defining the existence of a duty, lends itself to a factual determination concerning negligence and some might suggest is also relevant to an analysis of causality. The older and broader view reviewed briefly in the *Howell v. Clyde* opinion would allow the "assumption of the risk" to always be a jury question, in the appropriate case.

The trial court in the case at bar, after carefully reviewing and analyzing the opinions in *Howell v. Clyde, supra,* concluded that a majority of the Pennsylvania Supreme Court holds that the doctrine of "assumption of the risk" is a viable defense in Pennsylvania but only as it may narrowly apply to the existence of a

legal duty on the part of the defendant, owed to persons in plaintiff's class. Therefore, the trial court concluded that once the defendant's motion for a compulsory non-suit was denied where the doctrine of "assumption of the risk" is raised, the court must then submit the matter to the jury, pursuant to the law of comparative negligence and without instruction concerning the "assumption of the risk" doctrine. The trial court here could not make the decision that "... reasonable minds could not disagree that the plaintiff deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury ..." *(Howell v. Clyde, supra* at 162, 620 A.2d at 1113), and, therefore, was unable to determine as a matter of law that defendant owed plaintiff no duty of care. The trial court could not grant a compulsory nonsuit in that circumstance. Thus, the trial court denied defendant's post verdict motions seeking a new trial limited to the issue of "assumption of the risk." See *Hardy v. Southland Corporation,* 435 Pa. Super. 237, 645 A.2d 839 (1994).

It is for the foregoing reasons that this court concluded that the facts of this case, the applicable law, and justice required that defendant's post verdict motions should be denied.